OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State ex rel. Kmart Corporation v. City of Westlake
Planning Commission et al.
[Cite as State ex rel. Kmart Corp. v. Westlake Planning Comm.
(1994),        Ohio St.3d        .]
Mandamus to compel planning commission to either approve or
     reject development plan -- Writ granted, when.
     (No. 93-1350 -- Submitted September 28, 1993 -- Decided
January 12, 1994.)
     In Mandamus.
     Relator, Kmart Corporation ("Kmart"), plans to build an
expanded retail store, a "Super Kmart," in Westlake, Ohio, and
has purchased property already zoned for this use.  Kmart seeks
a writ of mandamus to compel respondents, the city of Westlake,
its planning commission, and Robert M. Parry, Westlake's
Director of Planning and Economic Development, to review and
either approve or reject the development plans proposed for the
project.
     Kmart submitted its application for development plan
approval, including an application fee, a letter describing its
project, fourteen copies of its development plan and a January
1992 traffic study, on February 17, 1993.  The plan was
distributed to certain city departments for comment that day.
On March 10, Parry prepared a "Box Score Sheet," which
"identified aspects of [the] plan that either did not meet
Westlake Zoning Code or raised other concerns."  On March 12,
the planning department received supplementary plans for
"signs, wall details, [and] site cross-section" from Kmart.  On
March 15, these plans were submitted for comment to the
pertinent city departments, and comments and recommendations
were returned by March 29.  In particular, the city engineer
recommended that Kmart provide storm sewer alternatives, a
dedication plat, an assembly plat, an independent traffic
study, and a plat for widening a road.
     Also on March 15, the planning commission met to consider
Kmart's development plan.  Toward the end of the meeting, some
local residents voiced concerns about Kmart's project, and
Kmart agreed to withdraw the plan from the commission's agenda
so that it could be discussed further at a "work session" to be

held March 29, 1993.

At the March 29 work session, the planning commission heard from more residents who opposed Kmart's project, and also from Westlake Mayor Dennis M. Clough, who shared the residents' view. (The mayor later advised a constituent that he had "instructed [the city's] Law Department to take every legal option available to prevent [the proposed Kmart store] from going forward.") In addition, Parry submitted a report describing his concerns about Kmart's proposal, which included the need for another traffic study that would take approximately four to six weeks to complete. No action was taken on the application at the March 29 session.

Thereafter, Kmart and the planning department corresponded regularly about additional materials necessary for development plan approval. On April 5, Parry asked if Kmart would help pay for the new traffic study. On April 8, Kmart resubmitted its development plan and accompanying materials under protest, claiming that the documents filed on February 16 were still pending. On April 14, a title company submitted on Kmart's behalf a supplemental list of the names of adjacent property owners who were apparently to be notified of Kmart's proposed development. On April 16, Parry acknowledged receipt of Kmart's "new" application, requested additional fees pursuant to a February 18 revision of the application fee schedule, and advised Kmart of "missing" data as follows:

"Survey including permanent parcel numbers (note: PP# cannot be read on copies submitted);

"A plat for the entire development area;

"Location, size, height, use, general design, color and material of all main and accessory buildings or structures (plus all appurtenances thereto including but not limited to HVAC units, vent fans, coolers, compressors, chimneys, etc. located on the roof or outside the building);

"Location and outline of buildings on adjoining parcels of land (such as those residential buildings on adjacent parcels on Dover and Westown);

"The location and layout for all areas of all permitted storage and displays of any material, vehicle, waste material, products or container for storage including storage enclosures;

"The location, size, height, design and material of all signs to be placed on the outside surfaces of all structures or vehicles on the property[.]"

Kmart's "new" development plans were distributed again to city departments for comment on April 19, and while Kmart initially refused to provide more fees and materials, it forwarded the requested street dedication plat and assembly plat, with the associated application and fee on June 30. On July 7, these were submitted to the city engineering and service departments for comment.

Meanwhile, the Westlake City Council was considering five proposed ordinances that affected, and Kmart claims restricted, construction of large retail stores, including the planned Super Kmart. These proposals, Ordinance Nos. 1993-73, 1993-74, 1993-75, 1993-76 and 1993-77, were introduced on April 1, 1993, just after the March 29 work session. The ordinances were passed by the city council on July 15 and apparently became effective on August 15, 1993.

Suspicious that the planning commission was deliberately delaying action on the development plan until the five "anti-Kmart ordinances" became law, Kmart filed this action on July 1, 1993. Kmart's request for an alternative writ was granted, and Westlake was ordered to show cause by July 29, 1993 why a writ of mandamus should not issue. After briefing was completed, Westlake asked that this cause be dismissed as moot because the pertinent ordinances had become effective.

Grendell & Marrer Co., L.P.A., Timothy J. Grendell and John P. Slagter, for relator.
Rademaker, Matty, McClelland & Greve, Robert C. McClelland and Bryan P. O'Malley, for respondents.

Per Curiam. This cause presents four issues. First, does Parry have a clear duty to immediately review Kmart's development plan and place it on the planning commission's agenda? Second, does the planning commission have a clear legal duty to immediately review and act on Kmart's development plan? Third, does Kmart have an adequate remedy in the ordinary course of law? Fourth, is this case moot?

For the reasons that follow, we hold that Parry owes the duty alleged, but that he complied by arranging for commission review on March 15. We further hold that (1) the planning commission had a duty under Section 1220.07 of the Westlake Zoning Code to approve or reject Kmart's development plan within sixty days after the March 15 meeting, (2) Kmart consented to an extension of this period until March 29, (3) the commission was then required to complete review within the next sixty days, and (4) the commission is now in default of its duty to approve or reject Kmart's plan. Finally, we hold that no adequate remedy existed and that the recently effective legislation did not extinguish Kmart's right to approval or rejection of its development plan.

### The Duties of Parry and the Planning Commission

Kmart argues that Parry has a duty to review and submit its development plan to the planning commission "as soon as practicable" under Section 1220.05 of the Westlake Zoning Code. Section 1220.05 provides, in part:

"After submittal of complete plans and review by the Planning Department for compliance to the Zoning Code pursuant to Section 1220.04, the Director of Planning shall place the development plan application on the Planning Commission agenda as soon as practicable. The Planning Commission shall review the plans taking into account the spirit and intent of the Zoning Code, the location of the proposal, the effect on the surrounding properties and the relationship of the proposal to the Guide Plan.

"The Commission, in reviewing the proposed development plans for conformity to the provisions of the Zoning Code, may make adjustments to certain yards, area and other dimensioned requirements based on the performance standards of Section 1220.06. * * * If modifications made by either the Planning Commission or applicant are subsequently approved by the Commission the modifications shall be made a part of the development plans and indicated on revised plans submitted by the applicant or such modifications shall be affixed to the

development plans approved and signed by the applicant and chairman of the Commission. * * *"

Kmart further contends that it has submitted final plans and undergone the requisite review process up to the point where submission of its plan to and action by the planning commission must come next. The penultimate step before placement on the commission agenda is described in Section 1220.04, which states:

"After the preparation of preliminary and final plans pursuant to Sections 1220.01 through 1220.03, fourteen complete sets of the final development plans shall be submitted to the Department of Planning accompanied by an application form, application fee and a letter describing the proposal. The Director of Planning or his assignees shall review the plans for completeness to [sic, compliance with] the Zoning Code requirements. Within thirty days of submittal, the Director shall notify the applicant if the submitted plans are complete and accepted by the Department for Planning Commission review and action. Acceptance of the plan does not waive the right of the Planning Department or Planning Commission to request additional documentation, information or detail during their review. Development plans shall be distributed to applicable departments as determined by the Director for review and comment. Upon completion of Department review, the applicant shall be requested to attend a post submission of department heads as he deems necessary. The Director of Planning shall notify the applicant of deficiencies in the submitted plan, compliance to the Zoning Code or other codes of the City, other department concerns and make recommendations which would improve the development plan. Recommendations by the Director of Planning are not exclusive or final. The Planning Commission may make additional recommendations or modifications as provided in Section 1220.05. After department review, the applicant may submit revised or amended plans to the Department for submission to the Planning Commission."

Westlake responds that Kmart has yet to comply with the requirements listed in Parry's April 16 letter and that review of Kmart's development plan is therefore still in the early correction and resubmittal stage described in Section 1220.02. This section provides that the director of planning shall, within thirty days after "seven preliminary copies of the development plans" are submitted, review such plans for "general conformance" to the requirements of Section 1220.03. Also during this period, the director of planning is to arrange a "presubmission conference" to discuss the application. Thereafter, the applicant shall make all necessary "corrections, amendments or revisions and resubmit the complete development plans * * * according to Section 1220.04."

Kmart's application for development plan approval, however, has progressed well beyond the review afforded by Section 1220.02. Final development plans, which are apparently preliminary plans that contain all the materials listed in Section 1220.03,1 are to be submitted to the planning department in fourteen complete sets. Section 1220.04. Kmart did this last February, and the plans were circulated for comment, as provided by Section 1220.04. The plans were also returned by all departments, apparently in preparation for the

planning commission meeting on March 15. The plan was acceptable enough at that time for Parry to put it on the commission agenda pursuant to Section 1220.05.

Section 1220.07 requires the planning commission to approve a submitted development plan, to approve a modification of the plan, or to reject the plan "[w]ithin sixty days from the date of the Commission meeting at which all required plans and data were first considered by the Planning Commission, * * * unless the applicant shall consent to an extension of the time limitation." The section next states:

"In the event the applicant chooses to withdraw the application, the time limitations of this section shall only apply if such application is later presented to the Planning Commission as required herein."

Citing this section, Westlake also argues that Kmart withdrew its plan from the review process entirely during the meeting on March 15 and, therefore, the sixty-day deadline applied only if Kmart's plan was presented a second time to the planning commission, presumably after reapplication.[2] We disagree.

Consent to an extension of the sixty-day deadline is not the same under Section 1220.07 as withdrawing an application for development plan approval, and in our view, Kmart merely agreed to extend the commission's review period. We draw this conclusion first from the minutes of the March 15 meeting, which state that Kmart's plan was being "withdrawn from the [commission's] Agenda" and that the plan is "to be discussed at the March 29, 1993 Work Session." A letter accompanying Kmart's resubmission of its application on April 8 corroborates this, stating:

"We contest this payment [of further application fees] as we have previously paid this on February 16, 1993, the original date of the filing. We were forced to withdraw the original Development Plan submission in order to accommodate the City of Westlake to hold a workshop on March 29, 1993. We contend that our filing of February 16, 1993 remains valid and, therefore, pay this fee under protest."

Moreover, Westlake's position is inconsistent with the planning department's continued review of Kmart's original application after the March 15 meeting.

Accordingly, we find that Parry has already fulfilled his duty under Section 1220.05 to place Kmart's development plan on the planning commission's agenda. We further find that the sixty-day deadline for approving or rejecting the plan commenced, by agreed extension, on March 29. The commission, therefore, had until May 28 to act and, those sixty days having passed, is now in default of the duty imposed by Section 1220.07.

Westlake alternatively claims that some of the documents needed for Kmart's second application are missing, that Kmart's initial application also did not sufficiently comply with the zoning code, and that a second traffic study must be completed. From this, the city argues that the sixty-day deadline in Section 1220.07 never commenced because the commission has yet to consider "all required plans and data" at any meeting.

Westlake reads this phrase too broadly. The sixty-day

period in Section 1220.07 is intended to limit the time for considering development plans already determined "complete" on review by the planning department, Section 1220.05, and to force a decision from the commission. If "all required plans and data" is construed to include every study and specification required by the zoning code, plus all the "additional documentation, information or detail" that the commission can demand under Section 1220.04, the sixty-day period could conceivably be put off forever. Moreover, if "all required plans and data" means, in effect, everything needed before the commission will approve a proposed development plan, the commission would never have reason to modify or reject a plan in advance of the sixty-day deadline.

Westlake raises one other argument related to the zoning code -- that even if Kmart's development plan is considered final for the purpose of Section 1220.04 as of June 30, Parry still had, under that section, thirty days left, or until July 30, to notify Kmart "if the submitted plans are complete and accepted" by the planning department.

We reject this argument due to our conclusion that Kmart consented to an extension of the commission's review pursuant to Section 1220.07 and did not completely withdraw its application. The object of planning department review under Section 1220.04 is to place complete development plans on the planning commission agenda, and Parry has already done this.

Finally, Westlake argues that Kmart has no right to planning commission review because it is in violation of federal law regulating the deposit of fill in wetland areas. The city cites a letter from the U.S. Army Corps of Engineers, in which the Army rejected Kmart's application for permission to grade and fill approximately one acre of wetlands. Since that letter, however, the Army has advised Kmart that (1) its application had been rejected by mistake, (2) its application was now considered active, and (3) no current violation of pertinent federal Clean Water Act standards existed on its property.

Accordingly, we hold that Parry has already complied with Section 1220.05 of the zoning code because he placed Kmart's development plan on the planning commission's agenda for March 15. We further hold that Kmart consented to extend the period in Section 1220.07 to March 29, but that the planning commission thereafter had a duty to approve, reject or approve a modification of Kmart's development plan within sixty days. Kmart, therefore, has shown the first prerequisite for a writ of mandamus to issue.

## Adequate Remedy

Before a writ of mandamus may be granted, we must also find that Kmart has no adequate remedy in the ordinary course of law. Westlake proposes the existence of only one such remedy -- an action for declaratory judgment.

State ex rel. Fenske v. McGovern (1984), 11 Ohio St.3d 129, 11 OBR 426, 464 N.E.2d 525, paragraph two of the syllabus, states:

"The availability of an action for declaratory judgment does not bar the issuance of a writ of mandamus if the relator demonstrates a clear legal right thereto, although the availability of declaratory judgment may be considered by the

court as an element in exercising its discretion whether a writ should issue. However, where declaratory judgment would not be a complete remedy unless coupled with ancillary relief in the nature of mandatory injunction, the availability of declaratory injunction [sic, judgment] is not an appropriate basis to deny a writ to which the relator is otherwise entitled."

As discussed, Kmart has shown a clear legal right to relief. Moreover, the declaratory judgment action Westlake suggests would not afford Kmart complete relief absent a mandatory injunction ordering the planning commission to approve or reject the instant development plan. Declaratory judgment, therefore, is not an adequate remedy.

Accordingly, we hold that Kmart has also shown the absence of an adequate remedy.

### Mootness

Westlake claims that this action is moot because the city has passed the five ordinances, discussed supra, adding or amending certain definitions and technical requirements applicable to large retail stores like the proposed Super Kmart. The city submits that on August 23, 1993, Parry returned Kmart's application and refunded its application fees pursuant to Section 1220.10 of the zoning code. Section 1220.10 provides, in part:

"The Department of Planning shall not process beyond initial review, a submission of any development plan concerning property, which, prior to the submission, in whole or in part, becomes the subject of legislation introduced by Council or submitted to the Clerk of Council by initiative petition, and which legislation if passed, and on its effective date, would change the classification of the zoning district in which such property is located so as to make the proposed development or use nonconforming or not permitted. In such a case, the Director of Planning after preserving a copy of same shall return the application together with a refund of any fees paid or deposited and advise the applicant of the proposed legislation and the provisions for later submittal. If the proposed legislation has not been passed or is not effective following the expiration of four months from the date the development plan was first presented for submittal, then the applicant, subject to the provisions of the following sentence, shall be permitted to submit the development plan provided it is identical in all respects to the development plan first presented. * * *" (Emphasis added.)

Section 1220.10, however, does not apply here. As Kmart points out, no legislation concerning its property or application for development plan approval was pending "prior to the submission" of its February 17 application. Further, none of the five ordinances "change[s] the classification of the zoning district" where Kmart's property is located, "so as to make the proposed development or use nonconforming or not permitted." Finally, the five ordinances were not effective within four months of Kmart's initial February 17 application.

Kmart also assails the constitutionality of applying these ordinances to its applications for development plan approval and asserts a right to have its plan reviewed for conformity with the zoning code as it existed when the applications were filed. Westlake does not defend the constitutionality of

applying the instant ordinances to Kmart, but Kmart's challenge is premature. It assumes the planning commission (or ultimately the city council, which reviews plans approved by the commission under Section 1220.07) will rely on these ordinances to disapprove Kmart's development plan. In effect, Kmart asks us for a decision that precludes such reliance in advance.

However, if Kmart's plan is eventually rejected because of the recently effective zoning ordinances, such disapproval should produce a final order from which Kmart could appeal pursuant to R.C. 2506.01. Cf. State ex rel. Harpley Builders, Inc. v. Akron (1992), 62 Ohio St.3d 533, 584 N.E.2d 724 (planning commission's preliminary approval of development plan is not a final order and cannot be appealed pursuant to R.C. 2506.01). The constitutionality of zoning ordinances is more appropriately a subject for that appeal. Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 526 N.E.2d 1350, paragraph one of the syllabus. Moreover, we are mindful that Kmart's purpose here is to compel the planning commission to exercise its discretion, not to control it. Accordingly, we do not resolve whether these ordinances may be constitutionally applied to Kmart's development plan.

### Conclusion

Based on the foregoing, we find that Kmart has a clear legal right to the planning commission's approval or rejection of its development plan, that Kmart has no adequate remedy in the ordinary course of law, and that this matter is not moot. We, therefore, grant the requested writ of mandamus and order the planning commission to either approve or reject Kmart's development plan.

Writ granted.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick and Pfeifer, JJ., concur.

F.E. Sweeney, J., dissents.

FOOTNOTES
1    Section 1220.03 provides:

"All development plans or parts thereof shall be prepared and submitted by a State licensed/registered professional such as an engineer, surveyor or architect. Development plans shall be drawn at a scale of not less than fifty feet to the inch and a plan for a division of a development of a group of lots and [sic] shall be drawn at a scale of not less than one hundred feet to the inch. The development plans shall include all of the following items, unless waived by the Director of Planning.

"(a)  Survey. A survey of the property including the permanent parcel numbers, land ownership and existing and proposed topography. Development plans shall also include a plat for the entire development area showing the street rights of way, easements, watercourses, retention basins, property line dimensions and bearings; surrounding streets and adjoining lots.

"(b)  Buildings and Structures. The location, size, height, use, general design, color and exterior facade material of all main and accessory buildings or structures and proposed fences or walls. The plans shall also indicate the location

and outline of buildings on adjoining parcels of land.

"(c)  Floor Plans.  Floor plans drawn to scale, dimensioned and labeled indicating the proposed uses of all building areas.

"(d)  Streets and Sidewalks.  The proposed public and private system of circulation including: automobiles, delivery trucks, emergency vehicles and pedestrian details for connection to existing streets and rights of way; methods to control traffic, size and type of pavement, estimate of traffic volume and proposed names of any street.

"(e)  Parking and Loading Areas.  The layout, location, dimensions and estimate of number of spaces, type of pavement, curbing, design features and landscaping.

"(f)  Utilities.  Preliminary on-site utilities including water lines, fire hydrants, sanitary sewers and storm sewers, including easements and connection to existing or proposed utility service to the project.

"(g)  Outdoor Storage.  The location and layout for all areas of all permitted storage or displays of any material, vehicle, waste material, products or container for storage including storage enclosures.

"(h)  Signs.  The location, size, height, design and material for all signs to be placed on the property or the outside surfaces of all structures or vehicles on the property.

"(i)  Landscaping and Lighting.  The design and location of all existing vegetation and proposed landscaping areas, open spaces, retention areas, yards including taxonomic names and sizes of all proposed plant material; the location, height, design and specifications of exterior lighting.

"(j)  Buffering.  The location, size, height and type of plantings and/or screening to be used in compliance with Chapter 1130 and/or plantings as may be required to satisfy the directives of the Planning Commission to separate, screen and/or protect adjoining property.

"(k)  Grading; Drainage. A topographic plan indicating existing and proposed grading, drainage, drainage structures, retention systems, ditches, drain sizes, easements and, if required, engineering documents and drainage calculations pursuant to Chapter 1111.

"(l)  The applicant shall also submit a list of names and addresses of all property owners within 500 feet of the perimeter of the premises to be developed, prepared and certified correct by a title company doing business within Cuyahoga County."

2    Indeed, when Kmart resubmitted its application, the city apparently started the review process over again.

Douglas, J., concurring.    While I agree with the majority that the time has come to have the planning commission finally consider relator's application for development plan approval, such concurrence should not be misconstrued.  The planning commission retains, in any way and fully, the right to review the application for completeness and to accept or reject the development based on that review.

Traffic surveys are essential in determining impact on neighboring development.  Here, a second traffic survey commissioned by the city council has not been completed.  Such surveys are always an integral part of any large-scale proposed

development and the planning commission is entitled to take this and other urged deficiencies (other, maybe, than the new city ordinances pertaining to such developments) into consideration in deciding whether to approve or disapprove the application. This then sets in motion the further administrative and legal reviews available to the parties. The mayor, the city council and the planning commission have responsibility to all the citizens of the city of Westlake -- not just to a proposed developer. Their deliberations and judgment should not be constricted, absent actions that are clearly arbitrary, capricious, unreasonable or unlawful.

A.W. Sweeney, J., concurs in the foregiong concurring opinion.

Francis E. Sweeney, Sr., J., dissenting. I respectfully dissent. To prevail in mandamus, the relator must demonstrate a clear legal right to the performance of an act which is enjoined by a corresponding clear legal duty. State ex. rel. Hodges v. Taft (1992), 64 Ohio St.3d 1, 3, 591 N.E.2d 1186, 1188. Absent an abuse of discretion, the extraordinary writ of mandamus cannot be used to compel a public body or official to act in a certain way on a discretionary matter. State ex rel. Dublin v. Delaware Cty. Bd. of Commrs. (1991), 62 Ohio St.3d 55, 60, 577 N.E.2d 1088, 1093; State ex rel. Veterans Serv. Office v. Pickaway Cty. Bd. of Commrs. (1991), 61 Ohio St.3d 461, 463, 575 N.E.2d 206, 207.

Westlake Planning and Platting Code 1109.02(a) and (b) require the police chief and the city engineer to review and comment upon shopping center development plans. Pursuant to this authority, they requested a traffic impact analysis be performed prior to their respective recommendations to the planning commission. After the planning commission reviews the matter, it makes its recommendation to the city council, which is vested with discretionary authority to review and approve all development plans. Section 9, Article IV, Westlake City Charter.

As recognized by Justice Douglas in his concurring opinion, traffic surveys are essential in determining impact on neighboring development and are always an integral part of any large-scale proposed development. Therefore, the results of the traffic survey requested by the city engineer and the police chief and recommended by the planning commission are vital to the exercise of the administrative discretion vested in the planning commission and must be completed prior to its review of the development plan and recommendation to city council.

Thus, relator is unable to establish a clear legal right to compel the planning commission to perform an administrative review of its development plan, which ultimately requires the administrative approval of the city council, until the traffic survey has been completed and reviewed by the planning commission. Moreover, until this review process has been completed, respondents have no clear legal duty to exercise their discretion over relator's application.

Finding that Westlake's actions are not arbitrary, capricious, unreasonable or unlawful, I believe the writ of mandamus should be denied.