THE STATE EX REL. SCRIPPS HOWARD BROADCASTING COMPANY *v.* CUYAHOGA COUNTY COURT OF COMMON PLEAS, JUVENILE DIVISION.

[Cite as *State ex rel. Scripps Howard Broadcasting Co. v. Cuyahoga Cty. Court of Common Pleas, Juv. Div.* (1995), 73 Ohio St.3d 19.]

(No. 94–2502—Submitted June 6, 1995—Decided July 13, 1995.)

*Baker & Hostetler, David L. Marburger, Beth A. Brandon* and *Bruce W. Sanford,* for relator.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Carol Shockley,* Assistant Prosecuting Attorney, for respondent.

---

*Per Curiam.* Relator contends in its second proposition of law that it is entitled to a writ of mandamus because the juvenile court's denial of access based on Juv.R. 37(B) violates its constitutional rights. In order to be entitled to a writ of mandamus, relator must establish a clear legal right to the transcript, a clear legal duty on the part of the juvenile court to provide the transcript, and that relator possesses no adequate remedy in the ordinary course of the law. See *State ex rel. Carter v. Wilkinson* (1994), 70 Ohio St.3d 65, 637 N.E.2d 1.

Judge Ferreri denied relator's request to purchase a copy of the transcript of the contempt proceeding on the basis of Juv.R. 37(B), which provides that "[n]o public use shall be made by any person, including a party, of any juvenile court record, including the recording or a transcript of any juvenile court hearing, except in the course of an appeal or as authorized by the court." There is no pending appeal regarding the oral contempt finding, which was never journalized or executed, and Judge Ferreri did not authorize release of the transcript to relator.

However, the Free Speech and Free Press Clauses of the First Amendment to the United States Constitution, the analogous provisions of Section 11, Article I of the Ohio Constitution, and the "open courts" provision of Section 16, Article I of the Ohio Constitution create a qualified right of public access to proceedings which have historically been open to the public and in which public access plays a significantly positive role. *In re T.R.* (1990), 52 Ohio St.3d 6, 556 N.E.2d 439, paragraph two of the syllabus; *Press–Enterprise Co. v. Superior Court* (1986), 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (*"Press–Enterprise II"*).

Where the particular proceeding at issue meets the foregoing "tests of experience and logic," the proceeding is presumed open and may be closed only by findings that closure is essential to preserve higher values and is narrowly tailored to serve an overriding interest. *Id.,* 478 U.S. at 9, 106 S.Ct. at 2740–2741, 92 L.Ed.2d at 11; see, also, *Press–Enterprise Co. v. Superior Court* (1984), 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629, 633 (*"Press–Enterprise I"*); *State ex rel. The Repository v. Unger* (1986), 28 Ohio St.3d 418, 421, 28 OBR 472, 475, 504 N.E.2d 37, 40.

Since juvenile court proceedings to determine if a child is abused, neglected, or dependent, or to determine custody of a minor child are neither presumptively open nor presumptively closed to the public, the juvenile court may restrict public access to these proceedings pursuant to Juv.R. 27 and R.C. 2151.35 based on a less stringent standard, *i.e.,* if the juvenile court finds, after hearing evidence and argument on the issue, (1) that there exists a reasonable and substantial basis for

believing that public access could harm the child or endanger the fairness of the adjudication, and (2) that the potential for harm outweighs the benefits of public access. *T.R., supra,* at paragraph three of the syllabus.

Relator contends that we should adopt the more stringent standard here, since although the juvenile court case generally involves the custody of a minor child, the specific proceeding at issue is a contempt proceeding in the case. The constitutional right of public access extends to general contempt proceedings. *In re Iowa Freedom of Information Council* (C.A.8, 1994), 724 F.2d 658, 661.

Nevertheless, relator cites no authority indicating that contempt proceedings in the context of juvenile court proceedings have been historically open to the public. See *T.R., supra,* 52 Ohio St.3d at 14–15, 556 N.E.2d at 448–449, where we determined that juvenile court proceedings in general have historically been closed to the public. Cf. *Morgan v. Foretich* (D.C.App.1987), 521 A.2d 248, 253 (applying less stringent closure standard to civil contempt proceeding adjudicating violation of visitation orders because it necessarily implicated the child's interests, rendering presumption of openness inappropriate). Therefore, the more stringent standard based upon a presumption of openness is not applicable. However, even under the *T.R.* standard, we have stated that "any restriction shielding court proceedings from public scrutiny should be *narrowly tailored* to serve the competing interests of protecting the welfare of the child or children and of not unduly burdening the public's right of access." (Emphasis *sic.*) *State ex rel. Dispatch Printing Co. v. Lias* (1994), 68 Ohio St.3d 497, 503, 628 N.E.2d 1368, 1373.

In *T.R.,* we did not pass upon the validity of Juv.R. 37(B) as it relates to the constitutional right of public access because the validity of the rule was not challenged. *Id.* at 19, 556 N.E.2d at 452. The right of access includes both the live proceedings and the transcripts which document those proceedings. *United States v. Antar* (C.A.3, 1994), 38 F.3d 1348, 1359–1361; *Press Enterprise I, supra* (right to transcript of voir dire proceeding); *Press Enterprise II, supra* (right to transcript of preliminary hearing); *Newspapers of New England v. Clerk–Magistrate* (1988), 403 Mass. 628, 531 N.E.2d 1261; see, also, *State ex rel. The Cincinnati Post v. Second Dist. Court of Appeals* (1992), 65 Ohio St.3d 378, 604 N.E.2d 153 (public entitled to certain court records in R.C. 2505.073 cases based on constitutional right of access). Therefore, although Judge Ferreri's contempt proceeding was open to the public, his order, purportedly made under Juv.R. 37(B), refusing to release the transcript of that proceeding to relator, impinged on the public's constitutional right of access. As such, Judge Ferreri was first required to make findings following a hearing consistent with *T.R., supra,* at paragraph three of the syllabus.

Here, Judge Ferreri did not make the requisite findings. In addition, the juvenile court has presented no evidence in this case either that there is a reasonable and substantial basis for believing that public access to the contempt proceeding transcript could harm Shampail or that any potential harm outweighs the benefits of public access. The purpose of Juv.R. 37(B) is to keep confidential juvenile court records involving children, since their welfare is at stake. See, generally, Kurtz & Giannelli, Ohio Juvenile Law (2 Ed.1989) 225–228, Section T 15.04(A). Yet, as relator aptly notes, there is no evidence that the child could be harmed by access to the transcript of a contempt proceeding involving the actions of the CCDCFS director and its attorney. In fact, Judge. Ferreri did not close the contempt proceeding itself from the press. Therefore, when Juv.R. 37(B) is construed consistently with the constitutional right of public access, see, generally, *State ex rel. Jones v. Hendon* (1993), 66 Ohio St.3d 115, 609 N.E.2d 541, and *United States v. A.D.* (C.A.3, 1994), 28 F.3d 1353, 1359, the juvenile court cannot withhold the requested transcript from relator.

Relator has established a clear legal right to purchase a copy of the transcript and a corresponding legal duty on the part of the juvenile court to provide it based on the right of public access. Relator's second proposition consequently possesses merit.

In its first proposition of law, relator asserts that it is also entitled to the requested transcript under R.C. 149.43, Ohio's Public Records Act. There is a historically based, "common law right to inspect and copy judicial records and documents." *Antar, supra*, at 1360, citing *Nixon v. Warner Communications, Inc.* (1978), 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 579. We have held that the videotapes of trial proceedings are public records under R.C. 149.43. *State ex rel. Harmon v. Bender* (1986), 25 Ohio St.3d 15, 25 OBR 13, 494 N.E.2d 1135; but, cf., *State ex rel. Steffen v. Kraft* (1993), 67 Ohio St.3d 439, 440, 619 N.E.2d 688, 689 (if R.C. 149.43 were interpreted to require disclosure of a trial judge's personal notes, result could be considered an unconstitutional legislative encroachment upon the independence of the judiciary).

The juvenile court contends that R.C. 149.43(A)(1) excepts the requested transcript from release because disclosure is prohibited by state law, *i.e.*, Juv.R. 37(B). Exceptions to disclosure are construed strictly against the custodian of the public records, which also bears the burden to establish an exception. *State ex rel. James v. Ohio State Univ.* (1994), 70 Ohio St.3d 168, 169, 637 N.E.2d 911, 912. Based on the disposition of relator's second proposition, Juv.R. 37(B) does not prevent the release of the requested transcript. Therefore, since Juv.R. 37(B) is the sole basis asserted by the juvenile court for refusing to allow relator to purchase a copy of the transcript, relator is also entitled to a copy of the transcript under R.C. 149.43.

Relator asserts in its final proposition of law that mandamus is the appropriate remedy here to compel the juvenile court to provide a copy of the transcript of the contempt proceeding. The juvenile court claims that a writ of mandamus is not appropriate, since mandamus will not lie to control judicial discretion, a declaratory judgment constitutes an adequate remedy at law, and relator's action is barred by *res judicata*.

When a court has discretion to act, its only duty is to exercise that discretion, and a writ of mandamus will not lie to control judicial discretion, even if that discretion is abused. *State ex rel. Keenan v. Calabrese* (1994), 69 Ohio St.3d 176, 180, 631 N.E.2d 119, 122. Conversely, under the particular circumstances involved here, the juvenile court had no discretion concerning the release of the transcript. Mandamus is appropriate to compel a trial court to provide a copy of a transcript to which relator is clearly entitled. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 593, 639 N.E.2d 1189, 1195; *State ex rel. Wright v. Cohen* (1962), 174 Ohio St. 47, 21 O.O.2d 294, 186 N.E.2d 618.

As to the juvenile court's contention that a declaratory judgment constitutes an adequate legal remedy which precludes a writ of mandamus, to the extent that relator seeks a copy of the transcript under R.C. 149.43, it need not establish the lack of an adequate remedy. See *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426, 639 N.E.2d 83, 88–89. Further, a declaratory judgment would not be an adequate remedy in the ordinary course of law because it would not be a complete remedy unless coupled with ancillary extraordinary relief in the nature of a mandatory injunction. *State ex rel. Fenske v. McGovern* (1984), 11 Ohio St.3d 129, 11 OBR 426, 464 N.E.2d 525, paragraphs one and two of the syllabus; *State ex rel. Kmart Corp. v. Westlake Planning Comm.* (1994), 68 Ohio St.3d 151, 158, 624 N.E.2d 714, 720.

Finally, the juvenile court claims that this action is barred by relator's prior action in this court in case No. 94–2153, where it sought a writ of prohibition ruling that the juvenile court improperly excluded the public and press from a closed session with the Cuyahoga County Administrator. The alleged closed session was related to the court's oral finding of contempt and occurred subsequent to the contempt proceeding at issue in this case. Relator attempted to have an amended complaint in case No. 94–2153 filed, but relator claims that it was refused by the Clerk of this court and that the Clerk further advised relator that the court would most likely deny any motion for leave to file any amended complaint. Relator had earlier filed a "motion" to compel the release of the transcript, but later withdrew it because it agreed with the juvenile court's assertion that the motion was merely a claim for a writ of mandamus. The case was consolidated for purposes of decision with case No. 94–2155, in which the owner of a different Cleveland television station sought a writ of prohibition

preventing any further closure order by Judge Ferreri in the juvenile court case absent notice, hearing, and the required findings, and a writ of mandamus compelling Judge Ferreri to release a transcript of all contempt proceedings held in *Hitchcock*. On the same date that case Nos. 94–2153 and 94–2155 were consolidated, they were dismissed by the court.

In Ohio, *res judicata* encompasses both estoppel by judgment and collateral estoppel. *State ex rel. Kirby v. S.G. Loewendick & Sons, Inc.* (1992), 64 Ohio St.3d 433, 437, 596 N.E.2d 460, 463. Estoppel by judgment prevents a party from relitigating the same cause of action after a final judgment has been rendered on the merits as to that party. *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, 1062. Collateral estoppel prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a previous suit. *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923.

Since relator's prior action was in prohibition rather than mandamus, estoppel by judgment does not apply. Additionally, the mandamus issue was not fully litigated and decided in relator's prohibition case, so collateral estoppel is inapplicable. Although the previous case was consolidated with another television station owner's action that included a similar claim for mandamus, that consolidation occurred on the same day as the entry dismissing both cases. " 'The main legal thread which runs throughout the determination of the applicability of *res judicata*, inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be "heard" in the due process sense.' " *Broz v. Winland* (1994), 68 Ohio St.3d 521, 523, 629 N.E.2d 395, 397, quoting *Goodson v. McDonough Power Equip, Inc.* (1983), 2 Ohio St.3d 193, 200–201, 2 OBR 732, 739, 443 N.E.2d 978, 985. Since relator was not afforded a fair opportunity to fully litigate the issues raised concerning its claim for a writ of mandamus in case No. 94–2153, *res judicata* does not bar the issuance of the writ.

Accordingly, since all of relator's propositions possess merit, a writ of mandamus is granted compelling the juvenile court to permit relator to obtain a copy of the transcript of the contempt proceeding.

*Writ granted.*

MOYER, C.J., WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., concurs in judgment only.

DOUGLAS, J., concurring. I concur in judgment only. This case is about the right of an organization (relator), which gathers and publishes news, to obtain a record made in a juvenile court proceeding which was open to the public. Respondent, Cuyahoga County Court of Common Pleas, Juvenile Division, denied

relator's request to purchase a copy of the record on the basis that Juv.R. 37(B) prohibits release of the record.

The record sought by relator involves, as fully described by the majority, a contempt proceeding held before a judge of respondent. The proceeding, which admittedly was held in a juvenile court, involved the alleged contempt of two adults at least one of whom is an attorney. The contempt hearing itself had nothing to do with any juvenile, and the record sought involved only the interaction between the court and the two adults.

I write separately because I believe that the majority's citation to *In re T.R.* (1990), 52 Ohio St.3d 6, 556 N.E.2d 439, is unwarranted, unneeded and inadvisable. This case is not about open courts. It *is* about a public record which should, or should not, be released through interpretation of Juv.R. 37(B).

It is my view that Juv.R. 37(B) involves records which specifically relate to, name and/or identify a particular juvenile(s). In support of this view, I respectfully submit consideration of Juv.R. 1(B), which states:

"(B) Construction. These rules shall be *liberally* interpreted and *construed* so as to effectuate the following purposes:

" * * *

"(3) to provide for the care, protection, and mental and physical development of children subject to the jurisdiction of the juvenile court * * *." (Emphasis added.)

Certainly, liberally construing Juv.R. 37(B) in conjunction with the purposes set forth in Juv.R. 1(B) leads to the conclusion that Juv.R. 37(B) was not designed to frustrate the release of records that do not involve a juvenile but, nevertheless, are part of a juvenile court proceeding. The following hypothetical, I believe, makes the point.

Assume a juvenile attends a Cleveland Indians baseball game. For whatever reason, the juvenile, while meeting with two of the team's stars, makes a threat that requires security officials to apprehend and arrest the juvenile. The juvenile then is required to appear in court and it is necessary for the two players to appear and testify. During the appearance of the players, the judge, the lawyers and court officials inquire of the players about their occupation and the progress of the season. One or both players indicate the exceptional seasons they and the team are having and a question is asked about the possibility of post-season play. One of the players, a team star, says that there is no question that "our team will win the division and league championship and, you can quote me, we will win the World Series if one is held by sweeping the National League team."

To some, this is big news and a sports reporter, being duly advised seeks a copy of that part of the player's testimony that has no connection with the

juvenile but is clearly music to the ears of us long-suffering Indian fans. Would anyone seriously contend that Juv.R. 37(B) prohibits the release of this exciting information to a person(s) who is seeking to disseminate the player's comments to a weary and yearning public? I would think not—and the release of the information has nothing to do with "open courts." In fact, in this case, the hearing on the contempt question was held in the presence of at least one television person who videotaped the contempt proceeding.

The record sought is not covered by Juv.R. 37(B) and it should be released forthwith. Accordingly, I concur in the judgment of the majority but not its reasoning. My fear is that in the future, the release of such records will be determined on an "open courts" standard, rather than on a standard governing public records and a proper construction of Juv.R. 37(B).