[Cite as *In re Deters*, 2020-Ohio-3518.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE:  ERIC DETERS  :  APPEAL NO. C-190516
TRIAL NO. M-1900912

:  *O P I N I O N.*

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 30, 2020

*Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere* and *Katherine L. Barbiere*, for Appellee Honorable Mark R. Schweikert,

*Robert A. Winter, Jr., The Deters Law Firm Co. II, P.A., James F. Maus* and *Shawn Crawford*, for Appellant Eric Deters.

**CROUSE, Judge.**

{¶1} Defendant-appellant Eric Deters appeals the trial court's judgment finding him in contempt of court. For the reasons set forth below, we affirm the judgment of the trial court.

***Facts and Procedure***

{¶2} In August 2017, the Ohio Supreme Court appointed appellee retired Judge Mark Schweikert to preside over the multitude of medical-malpractice cases involving Abubakar Atiq Durrani, M.D. The Deters Law Firm, with whom Deters is employed, represents a large number of the plaintiffs in the Durrani cases.

{¶3} On April 27, 2018, all persons involved with the Durrani litigation agreed to a gag order which generally prohibited public discussion of the Durrani cases and their merits. The order came about as a means of settling a prior contempt motion filed against Deters by the defendants in the Durrani cases. In January 2019, the defendants again sought contempt charges against Deters for alleged violations of the April 2018 order. The trial court held a hearing on the motion on March 22, 2019. At the March 22 hearing, the court instructed Deters to come into compliance with the gag order immediately and admonished him for his "foolish antics." Deters assured the court that he would follow the order. As a means of again settling the contempt allegations, all parties and their agents entered into a second gag order.

{¶4} The second order specifically prohibited "discussing, or posting information about, the cases and their merits with the general public through written or electronic media, the Internet, including social media, blogs, and similar media formats in any form." The order also forbade "participat[ing] in interviews with the media and/or from making public statements generally, including public demonstrations regarding the pending cases." It further ordered the removal of "content posted on any

2

website and/or social media platform which is in violation of this Order[.]" By its terms, the order applied to "all parties to the pending cases, their counsel, employees, agents, and witnesses."

{¶5} Following a case-management conference on August 6, 2019, the trial court denied the Durrani plaintiffs' request for group trials. In response to the August 6 order, Deters planned to issue a public comment to protest Judge Schweikert's handling of the Durrani cases. Upon learning of the planned comment, the court immediately issued a notice to Deters, stating: "[T]o the extent that any such activity is a violation of this Court's previous orders to refrain from public comment regarding [the Durrani] proceedings, and if the acts are observed by the Court, the Hamilton County Sheriff or other officer of this Court, this Court will treat such act as a Direct Contempt subject to possible incarceration[.]" The following day, Deters presented his public comment on the Hamilton County Courthouse steps. Judge J. Howard Sundermann (acting on behalf of Judge Schweikert), members of the Hamilton County Sheriff's Office, some of the plaintiffs in the Durrani cases, and local news reporters were present.

{¶6} A week later, the trial court issued a show-cause order. The order instructed Deters to appear before the court on September 3, 2019, at 3:00 p.m. The order further provided: "Said persons should bring their attorney and be prepared to proceed. There will be no delay or continuance for counsel or otherwise." The trial court held the contempt hearing on September 3, 2019, at "approximately" 4:00 p.m. Following the hearing, the court found Deters in contempt and sentenced him to 15 days in jail. Deters filed this timely appeal.

## Law and Analysis

{¶7} In one assignment of error, Deters challenges both the procedure and merits of the contempt finding. Deters primarily argues that he was denied due

process during the contempt hearing. First, Deters contends that he was denied the right to counsel when the trial court conducted the hearing without obtaining a valid waiver of counsel. Second, he claims that he was denied the right to a public trial and the right to call witnesses when the court held the hearing after the courthouse's public hours. He also challenges the sufficiency of the evidence supporting the trial court's finding of contempt. Judge Schweikert defends the finding of contempt by arguing that Deters's conduct was in direct contempt of court, and thus, not subject to due-process requirements.

## I. Direct or Indirect Contempt

{¶8} Contempt may be either direct or indirect. *In re Estate of Carrier*, 1st Dist. Hamilton No. C-030249, 2003-Ohio-6919, ¶ 13. The decisive determination is whether the misconduct occurred in the presence of the court. Where the court lacks personal knowledge of the conduct, and has to rely on information from witnesses to establish contempt, the conduct is indirect contempt. *State v. Stegall*, 1st Dist. Hamilton Nos. C-110767, C-120112 and C-120113, 2012-Ohio-3792, ¶ 39. The judge's reliance on witness testimony requires the trial court to afford the alleged contemnor a certain level of due process. *Id.*; *In re Chambers*, 2019-Ohio-3596, 142 N.E.3d 1243, ¶ 32 (1st Dist.). "These rights include reasonable notice before the hearing, the right to reasonable time to prepare a defense, the right to counsel, the right to subpoena and call witnesses, the right to invoke the privilege against self-incrimination (although the contemnor may be called as a witness), the right to an impartial judge, and proof of guilt beyond a reasonable doubt." *In re Estate of Carrier* at ¶ 15.

{¶9} On the other hand, where the court has personal knowledge of the conduct, the conduct is direct contempt. *In re Thomas*, 1st Dist. Hamilton No. C-

030429, 2004-Ohio-373. Direct contempt may be found and punished summarily pursuant to R.C. 2705.01. However, "[c]ourts must closely scrutinize proceedings in which there is a departure from due-process guarantees out of concern for potentially 'grave abuses.' " *Id.* at ¶ 13. Accordingly, R.C. 2705.01 limits the court's power to summarily punish a contemnor in two ways: (1) the acts must be known to the court personally such that no fact-finding determination is required; and (2) the nature or quality of the acts must be such that the orderly and effective conduct of the court's business requires immediate suppression and punishment. *Id.*

{¶10} In this case, the trial court loosely followed the procedure for indirect criminal contempt. The court provided Deters with written notice of the contempt proceedings, acknowledged Deters's right to retain counsel, allowed Deters the opportunity to present a defense, and informed Deters about his right against self-incrimination before he took the stand. Most importantly, the court held a hearing and took evidence before rendering a decision. At the hearing, the court introduced nine of its own exhibits, including a video recording of Deters's public comment and a screenshot of Deters's Facebook posts. However, the court also relied on the testimony of two sheriff's deputies to verify Deters's presence at the courthouse and to authenticate the video recording of Deters's public comment.

{¶11} Furthermore, the nature of Deters's acts did not require immediate suppression and punishment. Here, Judge Schweikert was concerned with preserving the impartiality of the jury pool. However, Deters presented his public comment on August 22, 2019, and the court successfully impaneled a jury five days later on August 27, 2019. The court then issued the show-cause order on August 29, 2019, and held a contempt hearing on September 3, 2019. At that time, the jury trial was well underway.

{**¶12**} Under these circumstances, we hold that Deters's conduct warranted an indirect contempt hearing with due-process protections.

## II. Waiver of Counsel

{**¶13**} First, Deters contends that he was denied the right to counsel when the trial court conducted the contempt hearing without obtaining a valid waiver of counsel.

{**¶14**} A defendant may waive his right to counsel so long as the waiver is made voluntarily, knowingly, and intelligently. *State v. Nelson*, 2016-Ohio-8064, 75 N.E.3d 785, ¶ 18 (1st Dist.). The record must show "that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver." *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

{**¶15**} A review of the record demonstrates that Deters wanted to exercise his right to counsel. At multiple points in the record, Deters told the court, "I don't want to proceed today without an attorney." Deters also stated, "I will proceed pro se only if the Court is forcing me to go forward at this hearing today." When the court asked Deters to sign a written waiver of counsel, Deters stated, "Please note whatever I sign is going to be subject to my already on the record objection." Deters then signed the waiver and wrote "over objection" under his signature. Before the presentation of evidence, the court recognized that Deters would "proceed under protest" and "signed a waiver under protest." Accordingly, we cannot find that Deters expressly waived his right to counsel.

{**¶16**} In the absence of an express waiver, the trial court may infer a waiver of the right to counsel when the defendant fails to obtain counsel in an attempt to delay the hearing. *State v. Fahey*, 1st Dist. Hamilton No. C-880331, 1989 WL 45261, *2 (May 3, 1989); *State v. Boone*, 108 Ohio App.3d 233, 670 N.E.2d 527 (1st

6

Dist.1995). A defendant may not take advantage of the trial court by claiming his right to counsel in order to frustrate or delay the judicial process. *State v. Hook*, 33 Ohio App.3d 101, 103, 514 N.E.2d 721 (10th Dist.1986), citing *State v. Wellman*, 37 Ohio St.2d 162, 309 N.E.2d 915 (1974). "Thus, when a defendant refuses to take effective action to obtain counsel, and on the day of trial requests a continuance in order to delay the trial, the court may, under the proper circumstances, be permitted to infer a waiver of the right to counsel." *Id.*

{¶17} We consider Deters's failure to obtain counsel under the totality of the circumstances. *Boone* at 238 ("[T]he court must consider the total circumstances of the case, including the background, experience, and conduct of the accused person."). We first note that Deters is no stranger to the law. Once a practicing attorney, and currently a law-firm employee, Deters has both legal knowledge and direct access to the legal community.

{¶18} With respect to this particular case, Deters has a lengthy history of contempt allegations. Prior to April 2018, the defendants in the Durrani cases filed a motion for contempt against Deters for alleged violations of a previous court order. On July 27, 2018, the court entered an agreed gag order to settle the contempt charges. In January 2019, the defendants again filed a motion for contempt against Deters for alleged violations of the July 2018 order. Deters appeared for a show-cause hearing on March 22, 2019. When the court asked if he was represented by counsel, Deters stated, "I'm going to always represent myself." On July 31, 2019, the court entered a second agreed gag order to again settle the contempt charges.

{¶19} With respect to this particular contempt charge, the trial court issued a show-cause order on August 29, 2019, which provided: "Said persons should bring their attorney and be prepared to proceed. There will be no delay or continuance for

7

counsel or otherwise." The following day, Deters responded to the order by way of a 157-page filing. The hearing was held four days later on September 3, 2019. Deters did not move for a continuance until the beginning of the hearing.

{¶20} In light of the circumstances, we find that Deters, by inference, waived his right to counsel and the trial court did not err in requiring him to proceed pro se.

### III. Right to a Public Trial

{¶21} Second, Deters argues that the trial court's decision to hold the contempt hearing after the courthouse's public hours violated his right to a public trial.

{¶22} An accused contemnor has the due-process right to a public trial. Ohio Constitution, Article I, Section 10; *State ex rel. Scripps Howard Broadcasting Co. v. Cuyahoga Cty. Court of Common Pleas, Juvenile Div.*, 73 Ohio St.3d 19, 652 N.E.2d 179 (1995) (extending the right of public access to general contempt proceedings).

{¶23} Ohio courts provide little guidance on this issue, so we turn to the federal courts for guidance. In *United States v. Anderson*, 881 F.3d 568, 573 (7th Cir.2018), the Seventh Circuit recognized that certain courtroom closures do not rise to the level of a violation of the right to a public trial. Whether a closure rises to the level of a constitutional violation depends on the extent to which it implicates the values underlying the public-trial right—to ensure a fair trial, to encourage witnesses to testify, and to discourage perjury. *Id.* Thus, trivial exclusions that are limited in duration and scope do not violate the defendant's right to a public trial. *Id.* at 573-574.

{¶24} In this case, the closure was minimal. As a preliminary matter, the closure was inadvertent rather than deliberate. The trial court originally scheduled the contempt hearing for 3:00 p.m. Due to a Durrani jury trial in progress, however, the hearing commenced at "approximately" 4:00 p.m. As part of their routine security measures, court security locked the courthouse entrance at 4:00 p.m. Nonetheless, the

doors to the courtroom remained open, and any spectators in the building prior to 4:00 p.m. could attend the hearing in its entirety. Indeed, several members of the press and other interested spectators were in attendance.

{¶25} Further, it is unclear whether any effective closure existed at all in this case. Deters makes no claim that anyone tried to attend after 4:00 p.m. but could not get inside the courthouse. In fact, the record indicates the contrary. Sometime prior to 4:00 p.m., Deters left the courthouse. However, upon the court's order, Deters reentered the building and returned to the courtroom. Presumably, court security was present and able to allow Deters access to the courthouse after hours.

{¶26} Under these circumstances, we cannot conclude that the partial closure of only the courthouse entrance violated Deters's right to a public trial.

IV.     Denial of Continuance

{¶27} Third, Deters contends that the trial court's denial of his motions for a continuance violated his due-process right of compulsory process.

{¶28} The denial of a continuance is within the sound discretion of the trial judge. *State v. Ungar*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). An appellate court must not reverse the denial of a continuance absent an abuse of discretion. *Id.*

{¶29} There are no mechanical tests for deciding when a denial of a continuance violates due process. *Id.* Rather, "[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). On review, "we must look at the facts of each case and the defendant must show how he was prejudiced by the denial of the continuance before there can be a finding of prejudicial error." *State v. Broom*, 40 Ohio St.3d 277, 288, 533 N.E.2d 682 (1988).

{¶30} During his testimony, Deters moved for a continuance to secure the presence of "witnesses who attended the event." However, Deters failed to proffer the desired testimony and how it would have been material to his defense. Deters stated only that, "I had Sarah York here. I was going to call as a witness to some notifications. And she had to leave. I got a text message here that she had to leave to pick up her boys." Therefore, Deters failed to demonstrate how he was prejudiced by the court's denial of his continuance.

{¶31} In closing his testimony, Deters also moved for a continuance to secure the presence of Judge Sundermann. Specifically, Deters stated, "I mean Judge Sundermann is a critical witness to me. That's another thing you could do. You can continue this. You can continue this to allow me to have Judge Sundermann." Deters had testified that he spoke to Judge Sundermann prior to the public comment. According to Deters, he informed Judge Sundermann that he was protesting Judge Schweikert and Chief Justice O'Connor's refusal to grant group trials for the plaintiffs in the Durrani litigation. Judge Sundermann allegedly told Deters that he was allowed to criticize the courts.

{¶32} The trial court denied Deters's request for a continuance because it determined that Judge Sundermann's testimony was inconsequential to the finding of contempt. The court was solely concerned with the fact that it had previously informed Deters what it considered to be a violation of the order and that Deters intentionally disregarded those instructions. Notably, Deters testified that Judge Sundermann told him not to mention Durrani's name. Deters then admitted that "I think I mentioned his name one time." This admission is corroborated by court's exhibit six, video footage of the public comment, which showed that Deters twice mentioned Durrani's name.

{¶33} Furthermore, Deters made no reasonable efforts to secure the presence of Judge Sundermann. Deters did not attempt to subpoena Judge Sundermann prior to the hearing, his reasoning being: "[W]e're mulling over what we should do. Are you really going to have the hearing? What's going on? Let's try to file the writ." Deters also waited until after the presentation of the court's evidence, and towards the end of his testimony (which spanned 42 pages of the transcript), to suggest a continuance to secure Judge Sundermann's presence.

{¶34} Under these circumstances, the court did not abuse its discretion in denying Deters's motions for a continuance.

V.     Sufficiency of the Evidence

{¶35} Fourth, Deters challenges the sufficiency of the evidence supporting the trial court's finding of contempt.

{¶36} As a preliminary matter, Deters contends that insufficient evidence supports his conviction because the court's exhibits were never formally admitted into evidence. The exhibits include a transcript of the March 22 hearing, the second gag order, the August 22 notice, a video recording from the courthouse security camera, a news article reporting on Deters's public comment, prior court orders sealing the Durrani verdicts, and a screenshot of Deters's Facebook page listing the redacted verdicts.

{¶37} Several courts have held that exhibits are deemed admitted where they "were treated below, without objection, as if they were admitted into evidence." *United States v. Barrett*, 111 F.3d 947, 951 (D.C.Cir.1997). *See, e.g., United States v. Stapleton,* 494 F.2d 1269, 1270 (9th Cir.1974) (seven exhibits marked for identification but not formally received into evidence deemed admitted where "[t]here was extensive testimony about each of them," "both parties, and the judge,

11

acted as if they were in evidence," and "defense counsel raised no question about the exhibits not being in evidence"); *State v. Brown*, 307 Kan. 641, 413 P.3d 783 (2018) (eight exhibits marked for identification but not formally received into evidence regarded as admitted where the state's witness provided extensive testimony regarding the exhibits while they were displayed to the jury, the judge and both counsel considered them to be admitted, and the defense made no issue of the exhibits until his appeal).

{¶38} Here, the court marked the exhibits for identification and introduced them. The court's witnesses provided testimony regarding at least two of the exhibits. Deters did not object at the hearing. In fact, Deters cross-examined the court's witnesses as if the exhibits were admitted. On appeal, Deters does not suggest that the exhibits were inadmissible or should otherwise not have been admitted into evidence. Therefore, the court's exhibits are deemed admitted.

{¶39} Having concluded that the court's exhibits were received into evidence, we now turn to the sufficiency of the evidence. At the contempt hearing and on appeal, Deters raised issue with the contents of the gag order and the court's broad interpretation of the order. However, Deters never appealed the gag order. In fact, Deters agreed to follow the order as the court interpreted it to settle prior contempt allegations. Therefore, the constitutionality of the gag order is not before us. Instead, we are asked to decide whether, when viewing the case "in the light most favorable to the trial court[,] * * * the facts would convince the average person beyond a reasonable doubt that [Deters] intend[ed] to violate the court's order[.]" *Rohr Corp. v. Wendt & Sons, Inc.*, 1st Dist. Hamilton No. C-961051, 1997 WL 770161 (Dec. 12, 1997).

{¶40} By its written terms, the gag order prohibited Deters "from making public statements generally, including public demonstrations regarding the pending cases." At

the March 22 hearing, the court informed Deters of its interpretation of the order—that "any comment that was reasonably expected to draw attention to [the Durrani litigation] and that might impact on the jury pool would be a violation." At the contempt hearing, Deters acknowledged the court's belief that "anything that brings light upon the Durrani litigation * * * is a violation of that gag order." Nonetheless, Deters admitted that he wanted to bring public attention to the plaintiffs of the Durrani trials. In fact, Deters invited local news channels to cover the public comment where he was "protesting with great vigor Judge Mark Schweikert and Chief Justice O'Connor's failure, failure, disgraceful to not give these Durrani victims their trials[.]"

{¶41} Deters's admission is supported by court's exhibit six, live-stream video footage of the public comment. During the comment, Deters detailed the procedures implemented for "these cases" and "these plaintiffs." Deters also stated: "These cases have great, great merit." Notably, Deters twice mentioned Durrani's name and named all of the Durrani plaintiffs in attendance at the comment. As reflected by court's exhibit seven, a local news channel subsequently reported on Durrani and the Durrani litigation.

{¶42} The gag order also required the removal of "content posted on any website and/or social media platform" which disseminated information about the Durrani cases and their merits. At the contempt hearing, Deters testified, "I posted on social media Deters Law Firm verdicts. I took out the name of every verdict. It doesn't mention Dr. Durrani at all. And I put the amounts on those verdicts totaling $89 million in 14 months." Court's exhibit nine, a screenshot of Deters's Facebook page, supports Deters's admission that he posted a chart of redacted Durrani verdicts.

**{¶43}** When viewing this evidence in the light most favorable to the trial court, the facts could convince the average person beyond a reasonable doubt that Deters intended to violate the court's order.

### *Summary*

**{¶44}** For the foregoing reasons, Deters's assignment of error is overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**MOCK, P.J.,** and **WINKLER, J.,** concur.

Please note:

    The court has recorded its own entry on the date of the release of this opinion.