## STATE EX REL. THE CINCINNATI ENQUIRER, DIV. OF GANNETT SATELLITE INFO. NETWORK, INC.

v.

## WINKLER, Judge, et al.

[Cite as *State ex rel. The Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Winkler,* 149 Ohio App.3d 350, 2002-Ohio-4803.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010763.

Decided Sept. 13, 2002.

Graydon, Head & Ritchey, L.L.P., John C. Greiner and Ann K. Schooley, for petitioner.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Gordon M. Strauss, Assistant Prosecuting Attorney, for respondents.

---

GORMAN, Judge.

{¶ 1} The relator, The Cincinnati Enquirer, filed this original action for a writ of mandamus to compel the respondents, Hamilton County Municipal Court Judge Ralph E. Winkler and Clerk of Courts James C. Cissell, to make available for inspection and copying the record of the court proceedings in *State v. Roach,* case No. B–0103023.[1] In a case that has garnered enormous publicity, Roach, a Cincinnati police officer, was acquitted in a bench trial of criminal charges involving the shooting death of a young African–American male, Timothy Thomas. Subsequently, Judge Winkler granted Roach's application for expungement and ordered the official record of the court proceedings sealed under the authority of R.C. 2953.52. On December 6, 2001, Enquirer reporter Marie McCain delivered a public-records request to Judge Winkler for the official court records of Roach's criminal trial. Judge Winkler informed her that, because he had already ordered these records sealed, he would not comply with the request.

{¶ 2} The Enquirer contends that R.C. 2953.52 is facially unconstitutional by its overly broad restriction on the public's right of access to court records, thus violating the First Amendment's declaration that the government shall pass no law abridging the freedom of the press. We agree that unless given a saving construction, R.C. 2953.52 is not sufficiently tailored to protect the public's right of access to court proceedings guaranteed not only by the First Amendment but also by Section 11, Article I, and Section 16, Article I, of the Ohio Constitution (the Ohio "Open Courts Clause").

{¶ 3} Rather than strike down the statute, however, we conclude that R.C. 2953.52 is amenable to a saving construction that protects the public's right of access as well as the government's needs and Roach's privacy interests. Such a construction requires that the trial court weigh all three factors and consider, particularly in a case of public importance, whether the articulated privacy interests of the person seeking expungement are sufficient to deny the public's presumptive right of access to court proceedings and records.

{¶ 4} Because the record understandably does not demonstrate that Judge Winkler undertook such an analysis before ordering the expungement in this case, we reserve judgment on the merits of the writ, maintain jurisdiction of this

---

1. Pursuant to R.C. 2721.12(A), the relator served a copy of the complaint on the Attorney General, who has neither entered an appearance nor moved for leave to intervene.

original action, and order Judge Winkler to expressly make such findings consistent with this opinion.

## Mandamus

{¶ 5} Before we discuss the issues raised by the expungement order, it is necessary first to address a jurisdictional challenge raised by the respondents. The respondents contend that this court cannot exercise original jurisdiction to issue a writ of mandamus because the Enquirer has a plain and adequate remedy at law, that being an action for declaratory judgment to challenge the constitutionality of R.C. 2953.52.

{¶ 6} Generally, an action in mandamus is proper only when the party requesting the writ pleads and proves the following: (1) the relator has a clear legal right to the relief requested, (2) the respondents have a clear legal duty to perform the acts requested, and (3) the relator has suffered an injury for which there is no plain and adequate remedy at law. *State ex rel. Seikbert v. Wilkinson* (1994), 69 Ohio St.3d 489, 490, 633 N.E.2d 1128. If, however, a declaratory judgment requires ancillary relief for a complete remedy, the existence of an adequate remedy at law is generally an inappropriate reason for denying a writ of mandamus. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631, paragraph six of the syllabus, approved and followed in *State ex rel. Zupancic v. Limbach* (1991), 58 Ohio St.3d 130, 133, 568 N.E.2d 1206.

{¶ 7} In accordance with this principle, a person seeking to compel the production of documents under the Public Records Act, R.C. 149.43, need not establish the lack of an adequate remedy at law in order to qualify for a writ of mandamus. *State ex rel. Scripps Howard Broadcasting Co. v. Cuyahoga Cty. Court of Common Pleas* (1995), 73 Ohio St.3d 19, 23, 652 N.E.2d 179.

{¶ 8} We hold, therefore, that this court has jurisdiction to determine whether a writ should issue.

## The Public's Right of Access to Court Records

{¶ 9} A limited right of public access to judicial records is recognized in both the state and the federal Constitutions. As noted by the Ohio Supreme Court in *Scripps Howard:*

{¶ 10} "[T]he Free Speech and Free Press Clauses of the First Amendment to the United States Constitution, the analogous provisions of Section 11, Article I of the Ohio Constitution, and the 'open courts' provision of Section 16, Article I of the Ohio Constitution create a qualified right of public access to proceedings which have historically been open to the public and in which public access plays a significantly positive role. *In re T.R.* (1990), 52 Ohio St.3d 6, 556 N.E.2d 439,

paragraph two of the syllabus; *Press–Enterprise Co. v. Superior Court* (1986), 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (*'Press–Enterprise II'*)." *Scripps Howard,* supra, 73 Ohio St.3d at 20, 652 N.E.2d 179.

{¶ 11}   Although it is only a qualified right, the right of access to court proceedings includes both live proceedings and transcripts that document those proceedings.   Id. at 21, 652 N.E.2d 179 (citing cases); see, also, *In re Knoxville News–Sentinel Co., Inc.* (C.A.6, 1983), 723 F.2d. 470, 474.   Court proceedings that have been historically open to the public may be closed "only by findings that closure is essential to preserve higher values and is narrowly tailored to serve an overriding interest." *Scripps Howard,* supra, 73 Ohio St.3d at 20, 652 N.E.2d 179; see, also, *State ex rel. The Repository v. Unger* (1986), 28 Ohio St.3d 418, 421, 28 OBR 472, 504 N.E.2d 37.   Significantly, even when the presumption of openness has *not* historically applied to a certain proceeding, the Ohio Supreme Court has determined that any restriction shielding court records from public scrutiny should be narrowly tailored to serve the competing interests of protecting the individual's privacy without unduly burdening the public's right of access. *Scripps Howard,* supra, at 21, 652 N.E.2d 179.

{¶ 12}   In conjunction with the constitutional right of access, Ohio has enacted its own Public Records Act, R.C. 149.43.   The premise of the Act is that public records should be open to public inspection.   As explained by the Ohio Supreme Court in *Dayton Newspapers v. Dayton* (1976), 45 Ohio St.2d 107, 109, 74 O.O.2d 209, 341 N.E.2d 576:

{¶ 13}   "The rule in Ohio is that public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people;   therefore, anyone may inspect such records at any time, subject only to the limitation that such inspection does not endanger the safety of the record, or unreasonably interfere with the discharge of the duties of the officer having custody of the same."

{¶ 14}   Under the Act, all public records—defined as "any record kept by any public office"—must be made available for public inspection "to any person at all reasonable times."   R.C. 149.43(B)(1).   The only exceptions are those records falling within one of the statutory exemptions of R.C. 149.43(A)(1)(a) through (v).

{¶ 15}   In addition to its constitutional underpinnings, the Ohio Public Records Act also codifies the common-law rule that the public has a presumptive right to inspect and copy court records.   See *Nixon v. Warner Communications, Inc.* (1978), 435 U.S. 589, 597–598, 98 S.Ct. 1306, 55 L.Ed.2d 570; *Scripps Howard,* supra, 73 Ohio St.3d at 22, 652 N.E.2d 179; see, also, Note, Sealed Out-of–Court Settlements:  When Does the Public Have a Right to Know? (1990), 66 Notre Dame L.Rev. 117, 120–131.   The purpose of the common-law right is to

promote understanding of the legal system and to ensure public confidence in the courts. See *State ex rel. WHIO–TV–7 v. Lowe* (1997), 77 Ohio St.3d 350, 355, 673 N.E.2d 1360; 66 Notre Dame L.Rev. at 127. The right at common law is not absolute, however, as courts have traditionally been given supervisory power over their own records and files. For example, the common law recognizes the courts' inherent authority to limit public access to records when their use is for spiteful purposes or to serve as "reservoirs of libelous statements for press consumption." *Nixon,* supra, at 597–598, 98 S.Ct. 1306, 55 L.Ed.2d 570; see, also, *Knoxville News–Sentinel,* supra, 723 F.2d at 474.

The Expungement Statute vis-à-vis the Public's Right
of Access and the Ohio Public Records Act

{¶ 16} At any time after a finding of not guilty in a criminal prosecution or a dismissal of the complaint or indictment, R.C. 2953.52(A)(1) provides that the defendant may apply to the court for an order to seal the official records. If an application is made, a date is set for a hearing. If the prosecutor objects, he or she must file an objection with the court and specify the reasons he or she believes justify a denial of the application. R.C. 2953.52(B)(1). Under R.C. 2953.52(B)(2)(a), the court is then required to do the following:

{¶ 17} "(a) Determine whether the person was found not guilty in the case, or the complaint, indictment, or information in the case was dismissed, or a no bill was returned in the case and a period of two years or a longer period as required by section 2953.61 of the Revised Code has expired from the date of the report to the court of that no bill by the foreman or deputy foreman of the grand jury;

{¶ 18} "(b) Determine whether criminal proceedings are pending against the person;

{¶ 19} "(c) If the prosecutor has filed an objection in accordance with division (B)(1) of this section, consider the reasons against granting the application specified by the prosecutor in the objection;

{¶ 20} "(d) *Weigh the interests of the person in having the official records pertaining to the case sealed against the legitimate needs, if any, of the government to maintain those records.*" (Emphasis added.)

{¶ 21} As can be seen, the expungement statute does not explicitly require the court to consider the public interest in maintaining access to the records. Rather, the statute only expressly requires the court to consider the applicant's personal privacy interests in favor of the expungement against the government's need to maintain those records. If the prosecutor chooses not to object to the expungement, a facile construction of the statute would allow the court to order the records sealed without any consideration of the public's presumptive right of

access embodied in the First Amendment, the Ohio Constitution, the common law, and the Ohio Public Records Act.

{¶ 22} The Ohio Supreme Court has determined that the basis for a court's jurisdiction to order expungement and to seal records of a criminal case is "the constitutional right to privacy." *Pepper Pike v. Doe* (1981), 66 Ohio St.2d 374, 377, 20 O.O.3d 334, 421 N.E.2d 1303. The legislative purpose of R.C. 2953.52 is to spare the applicant the economic, social, and legal consequences that accompany disclosure of these records. Id. at 378, 421 N.E.2d 1303.

{¶ 23} The applicant's legitimate privacy interests, however, must be conscientiously weighed against the public's right of access. Where a trial has been greatly publicized, the privacy interests of the defendant may have become greatly attenuated, as he or she has been thrust into the spotlight and assumed the role of a public figure. Simply because the defendant has been acquitted does not automatically justify removing all record of the trial from public scrutiny, particularly in a case that has social, political, and historical significance. "[E]ven individuals who have never been convicted are not entitled to expungement of their arrest records as a matter of course." *Pepper Pike,* supra, 66 Ohio St.2d at 376–377, 421 N.E.2d 1303. The expungement statute was not intended "to be a carte blanche for every defendant acquitted of criminal charges," but was conceived, rather, as applying to unusual cases that were brought for personal or vindictive purposes. Id. "Typically, the public interest in retaining records of criminal proceedings, and making them available for legitimate purposes, outweighs any privacy interest the defendant may assert." Id.

{¶ 24} Concededly, the Ohio Public Records Act specifically exempts from the definition of a "public record" those "[r]ecords the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(v). Respondents contend that court records in a criminal case, once sealed by the trial court under the authority of R.C. 2953.52, come within this statutory exemption. R.C. 2953.55(B), they point out, makes it a fourth-degree felony for any "officer or employee of the state or any of its political subdivisions" to knowingly release sealed court records "for any purpose involving employment, bonding, licensing, or education."

{¶ 25} While we agree that a properly sealed record is not a public record under the exemption found in R.C. 149.43(A)(1)(v), the question still remains whether the means by which the record is sealed is constitutionally acceptable. In *Scripps Howard,* for example, the Ohio Supreme Court held that Juv.R. 37(B) could not be used to prohibit public access to a transcript of a contempt hearing when there was no evidence that the transcript would harm the juvenile. The juvenile court's reliance on Juv.R. 37(B) to justify its refusal to release the transcript was held to be an unconstitutional impingement upon the public's First Amendment right of access to court records. The Ohio Supreme Court made

clear that "any restriction shielding court proceedings from public scrutiny should be narrowly tailored to serve the competing interests of protecting the welfare of the child or children and of not unduly burdening the public's right of access." *Scripps Howard,* supra, 73 Ohio St.3d at 21, 652 N.E.2d 179.

{¶ 26} A similar analysis was employed by the Ohio Supreme Court in determining the validity of the statutory provision that calls for secrecy of court records whenever a juvenile obtains a judicial bypass of parental notification before obtaining an abortion under R.C. 2505.073(B). *State ex rel. The Cincinnati Post v. Second Dist. Court of Appeals* (1992), 65 Ohio St.3d 378, 604 N.E.2d 153. The parental-notification statute provides that "[a]ll papers and records that pertain to an appeal under this section shall be kept confidential and *are not public records under section 149.43 of the Revised Code.*" (Emphasis added.) R.C. 2505.073(B). In determining the validity of this section, the Ohio Supreme Court balanced the confidentiality of the minor's identity and the public's right of access under the Open Courts Clause of Section 16, Article I of the Ohio Constitution, applying the same test it uses when a court closes the courtroom to the press. Noting that any restriction on the right of public access should be narrowly tailored, the court refused to "extend the cloak of secrecy beyond what is necessary." Id. at 381, 604 N.E.2d 153. To accommodate the competing interests, the court held that the public is entitled, from the court records of each case, to the docket number, the name of the judge, and the decision, including, if appropriate, a redacted written opinion.

{¶ 27} Employing the same analysis requiring that a statute denying public access to court records be narrowly tailored, we are persuaded that in the absence of a saving construction, R.C. 2953.52 facially impinges upon the public's constitutional right of access. As we have seen, nowhere on the face of the statute is the trial court instructed to consider the public's right of access to court records when weighing the decision to expunge. The sole consideration for the court is whether the privacy rights of the individual outweigh government's "needs" in maintaining criminal records. The shielding of court proceedings without narrowly tailored restrictions on the public's right of access under R.C. 2953.52 substantially imperils the public's constitutional right of access to judicial records.

## Saving Construction

{¶ 28} Legislative enactments bear a strong presumption of constitutionality. *State v. Collier* (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552; *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224. Furthermore, "[o]nly a statute which is substantially overbroad may be invalidated on its face." *Houston v. Hill* (1987), 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398. The

expungement statute that we are addressing, it should be noted, has a worthy legislative purpose in silencing allegations of criminal conduct after a person has been tried and acquitted, and in the vast majority of non-newsworthy cases there is little or no issue with respect to the applicant's privacy interests weighing in favor of expungement. We are concerned here only with the rare case that has important significance to the public at large.

{¶ 29} The Ohio Supreme Court adheres to the sound principle that "if it is reasonably possible, validly enacted legislation must be construed in a manner 'which will avoid rather than * * * raise serious questions as to its constitutionality.'" *Akron v. Rowland,* 67 Ohio St.3d 374, 380, 618 N.E.2d 138, quoting *Cooperative Legislative Commt. of the Transp. Bhds. & Bhd. of Maintenance of Way Emp. v. Pub. Util. Comm.* (1964), 177 Ohio St. 101, 29 O.O.2d 266, 202 N.E.2d 699, paragraph two of the syllabus. A construction must not ignore the plain terms of the statute or "insert a provision not incorporated therein by the Legislature." *State ex rel. Defiance Spark Plug Corp. v. Brown* (1929), 121 Ohio St. 329, 331–332, 168 N.E. 842. Otherwise, however, a construction of a statute must only bear some "reasonable relationship to the language of the enactment." *Akron,* supra, at 380, 618 N.E.2d 138.

{¶ 30} Applying these rules of construction, we conclude that R.C. 2953.52(B)(2)(a) is susceptible of a saving construction that makes it constitutionally acceptable. Specifically, we hold that the "legitimate needs" of the government in maintaining the records, referred to in subsection (B)(2)(d), should be read to include the legitimate need of the government to protect the public's presumptive right of access to judicial records. In other words, we construe the statute to require that the trial court consider not only the applicant's privacy interests and the prosecutor's objections, if any, but also the public's legitimate interest in a given case that would caution against sealing the record from any further public examination. Such a construction, we believe, protects the statute from facial challenge and is reasonably related to both the statutory language and the legislative intent.

### Order

{¶ 31} Because of the construction we have given to R.C. 2953.52(B)(2), and the absence of any findings in the record before us, we consider it necessary that Judge Winkler provide this court with specific findings demonstrating that a proper balancing has taken place. Only with such findings may we determine whether the Enquirer has demonstrated that it is entitled to access to the documents under the Ohio Public Records Act, or whether the record of the Roach trial has been properly expunged, notwithstanding the public's right of

access, and thus whether the trial records are no longer public records under R.C. 149.43(A)(1)(v).

{¶ 32} Accordingly, judgment on the petition for a writ of mandamus is reserved, but jurisdiction over this action is maintained for further proceedings. Judge Winkler is hereby ordered to provide this court with findings consistent with R.C. 2953.52(A)(1) and R.C. 2953.52(B)(2), as we have construed those sections in this opinion. Specifically, Judge Winkler should identify Roach's privacy interests and consider them in the context of the publicity that surrounded the trial, the public importance of the trial, and the public's presumptive right of access to inspect the trial records. Following receipt of those findings, this court will then proceed to determine the appropriateness of granting the writ.

So ordered.

DOAN, P.J., and SUNDERMANN, J., concur.