The STATE ex rel. THE CINCINNATI ENQUIRER, DIVISION OF
GANNETT SATELLITE INFORMATION NETWORK, INC.

v.

WINKLER et al.

[Cite as *State ex rel. The Cincinnati Enquirer, Div. of Gannett Satellite Info.
Network, Inc. v. Winkler*, 151 Ohio App.3d 10, 2002-Ohio-7334.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–010763.

Decided Dec. 31, 2002.

Graydon, Head & Ritchey, L.L.P., John C. Greiner and Ann K. Schooley, for
petitioner.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Gordon M.
Strauss, Assistant Prosecuting Attorney, for respondents.

DOAN, Presiding Judge.

{¶ 1} The relator, The Cincinnati Enquirer, has filed this original action for a writ of mandamus to compel the respondents, Hamilton County Municipal Court Judge Ralph E. Winkler and Clerk of Courts James C. Cissell, to make available for inspection and copying the record of the court proceedings in *State v. Roach,* case No. B–0103023.[1] Judge Winkler, who had earlier granted Roach's application under R.C. 2953.52 to have the record sealed, denied the Enquirer's request under the Ohio Public Records Act to examine the record.

{¶ 2} In *Enquirer I,*[2] we held that R.C. 2953.52 was, as written, facially unconstitutional because of its overly broad restriction on the public's right of access to court records, thus violating the First Amendment's proscription that the government shall pass no law abridging the freedom of the press. We held that, unless narrowly tailored, the statute violated the public's right of access to court proceedings guaranteed not only by the First Amendment, but also by Sections 11 and 16, Article I of the Ohio Constitution (the Ohio "Open Courts" Amendment).

{¶ 3} Rather than striking down the statute, however, we concluded that R.C. 2953.52 was amenable to a saving construction that would protect the public's right of access as well as the government's needs and Roach's privacy interests. Our construction required that the trial court weigh all three factors and consider, particularly in a case of public importance such as this, whether Roach's articulated privacy interests were sufficient to overcome the public's presumptive right of access to court proceedings and records. Because of the new construction we had given the statute, we ordered Judge Winkler to submit new findings.

{¶ 4} Judge Winkler has submitted his findings and detailed at great length his thought process in again granting Officer Roach's application to have the record of the trial sealed. Having reviewed Judge Winkler's findings, we are convinced that he has given careful thought to the public ramifications of this case, but that he still feels strongly that Officer Roach's privacy interests prevail over the public's limited right of access. As this court has previously held, R.C. 2953.52 vests in the trial court the discretion either to grant or to deny an application to seal the record. *State v. Grove* (1986), 29 Ohio App.3d 318, 29 OBR 418, 505 N.E.2d 297. This being so, we cannot order the trial court to act simply because we may disagree with its judgment. Rather, in order to compel disclosure, we must, at the very least, be convinced that the trial court acted

---

1. Pursuant to R.C. 2721.12(A), the relator served a copy of the complaint on the Attorney General, who has neither entered an appearance nor moved for leave to intervene.

2. 149 Ohio App.3d 350, 2002-Ohio-4803, 777 N.E.2d 320, 31 Media L.Rep. 1021.

unreasonably, arbitrarily, or unconscionably. *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 654 N.E.2d 1254. Judge Winkler's findings cannot be said to amount to an abuse of discretion. Accordingly, we hold that the record was properly sealed under R.C. 2953.52, and that it is therefore excluded from the Ohio Public Records Act under R.C. 149.43(A)(1)(v). That subsection specifically exempts from the definition of a "public record" those "[r]ecords the release of which is prohibited by state or federal law."

{¶ 5} Accordingly, we decline to issue a writ of mandamus.

Writ denied.

SUNDERMANN, J. concurs.

GORMAN, J., dissents.

GORMAN, Judge, dissenting.

{¶ 6} In *Enquirer I,* we held that R.C. 2953.52, as written, facially impinges upon the public's constitutional right of access to court records by failing to expressly require the trial court to consider the public interest in the case. Nonetheless, we held that the statute was susceptible of a saving construction that requires the trial court to consider the public's presumptive right of access, as well as other interests, before removing the trial record from any further public scrutiny. See *State ex rel. Scripps Howard Broadcasting Co. v. Cuyahoga Cty. Court of Common Pleas* (1995), 73 Ohio St.3d 19, 23, 652 N.E.2d 179.

{¶ 7} In my view, Judge Winkler's reasons for reaffirming his decision to seal the records of Officer Roach's trial—which have been filed with this court under seal—are no doubt well intended but are still insufficient to overcome the overwhelming public interest in this case. His reasons are several, but they can be distilled as follows: Officer Roach presented himself as a "commendable person, police officer and family man," the charges against him were "unjust" and "unfounded," the publicity surrounding the case did not justify not sealing the record, and if members of the public wanted to know anything about the case, they had "alternative sources of history."

{¶ 8} Officer Roach had the misfortune to find himself in a difficult position, requiring split-second decision-making, all in the service of the citizens of this community. But Judge Winkler's finding that Officer Roach was "charged unjustly" and that the charges were "unfounded" has no factual support. After the grand jury returned the indictment against Officer Roach, the prosecuting attorney stated publicly that the grand-jury proceedings that resulted in the indictment against Officer Roach were the most thorough and extensive ever. He emphasized that over thirty witnesses had appeared before the grand jury that indicted Officer Roach for the death of Timothy Thomas. The state's

subsequent failure to offer evidence to persuade Judge Winkler of Officer Roach's guilt does not mean, as he has suggested, that the grand jury's finding of probable cause was "unfounded" or that the indictment charged him "unjustly."

{¶ 9} Further, Judge Winkler's view that the public interest should be satisfied by the availability of information about the trial through other unofficial sources such as newspapers or Court TV only emphasizes the enormous public interest in this case. Acknowledging that "[t]he entire case was very public," he nevertheless concluded that "these alternative source[s] of historical information" about the Roach trial are still available and retrievable by the public. I find this troubling. The story of a trial with perhaps the most significant social, economic, and·political impact upon the city in recent memory must now depend on hearsay accounts from secondary sources. Any citizen wishing to study or write about this case in the future will be unable to examine firsthand the indictment, the exhibits, and the transcript, but will instead have to settle for newspaper and television accounts.

{¶ 10} Because Officer Roach's actions sparked a three-day riot and lingering racial tensions that continue to affect this city, it is naïve and fanciful to believe that suppression of the court records will realistically shield Officer Roach from further publicity. Court records of other cases demonstrate the futility of now trying to keep the criminal trial private. For example, in the case of *Cincinnati Arts Assn. v. Jones,* 120 Ohio Misc.2d 26, 2002-Ohio-5428, 777 N.E.2d 346, at ¶ 3, Judge Nurre stated in his reported opinion that "[o]n April 7, 2001, then Cincinnati Police Officer Steven Roach shot and killed Timothy Thomas." His narration of the facts then cogently described what followed. For that matter, whenever the state indicts an individual for a crime, that person's privacy interests are inevitably compromised by news media doing what the media are constitutionally entitled to do. The unintended consequences of the expungement are already apparent. Officer Roach is currently the subject of a wrongful-death action in which the city, as his employer, is a named defendant. The federal judge trying the case has ordered that court records of the trial be turned over to the plaintiffs in discovery.

{¶ 11} Although the Ohio Supreme Court has indicated that the basis for expungement is the constitutional right to privacy, see *Pepper Pike v. Doe* (1981), 66 Ohio St.2d 374, 20 O.O.3d 334, 421 N.E.2d 1303, from a First Amendment standpoint, once Officer Roach shot and killed Timothy Thomas in the line of duty, he took on the stature of a public figure. As a public figure, under *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, Officer Roach had no actionable claim for defamation against the news media for their published accounts of the shooting, absent proof of a malicious falsehood. As police officers are deemed public officials, Officer Roach lacks standing to

assert a right of privacy against news stories that are merely critical of his conduct. *New York Times Co. v. Sullivan,* supra; *Soke v. The Plain Dealer* (1994), 69 Ohio St.3d 395, 632 N.E.2d 1282. Accordingly, any balancing of interests under the expungement statute must take into consideration the overwhelmingly superior First Amendment rights of the press and the extremely attenuated privacy interests of Officer Roach as a public figure.

{¶ 12} Admittedly, the decision to seal the court records of a trial has traditionally been viewed as a matter within the trial court's sound discretion. Where the public interest is involved, however, I believe that a reviewing court should not slavishly defer to the trial court's judgment. The public's constitutional right of access cannot be a matter of judicial whim, particularly under a statute that has required narrow tailoring. Thus, I would advocate, if not *de novo* review, then at least a more critical review of a trial court's decision to seal the record of a publicly important case than the traditionally quiescent abuse-of-discretion standard.

{¶ 13} R.C. 2953.52 does not require the sealing of the record of every criminal trial in which the defendant is acquitted. See *State v. Grove* (1986), 29 Ohio App.3d 318, 320, 29 OBR 418, 505 N.E.2d 297 (record not sealed where defendant acquitted of aggravated murder); see, also, *State v. Haney* (1991), 70 Ohio App.3d 135, 138, 590 N.E.2d 445 (record not sealed where defendant charged with murder for shooting of drug dealer but found not guilty by reason of insanity); and *State v. Newton,* 10th Dist. Nos. 01AP–1443 and 01AP–1444, 2002-Ohio-5008, 2002 WL 31111849 (record not sealed where defendant found not guilty of aggravated robbery, two counts of robbery, attempted murder, felonious assault, and having a weapon under disability). The statutory burden was on Officer Roach to establish that his privacy interest in sealing the court records of his trial was not simply equal to, but was greater than, the state's interest in maintaining an open record.

{¶ 14} I reject the argument that R.C. 2953.52 effectively overrules *Pepper Pike v. Doe* (1981), 66 Ohio St.2d 374, 377, 20 O.O.3d 334, 421 N.E.2d 1303, by placing much greater emphasis on the applicant's privacy interests. This court has previously held that *Pepper Pike* is still viable even after the enactment R.C. 2953.52, and that the public's interest in keeping open records of its criminal trials, even under the statute, typically outweighs the interest of the acquitted defendant in having the record sealed. *Grove,* supra. As Chief Justice Moyer has noted, even if the individual's privacy interest has been elevated by enactment of R.C. 2953.53 (and, by implication, R.C. 2953.52), "the public's need to know is a relevant, legitimate governmental need under the statute." *State v. Greene* (1991), 61 Ohio St.3d 137, 140, 573 N.E.2d 110 (Moyer, C.J., concurring in part and dissenting in part).

{¶ 15}   Public trust depends on the openness and accountability of courts and their proceedings.   Access serves as a check against misconduct, ineptitude, and corruption in criminal trials and promotes public confidence that justice is being fairly administered by judges and prosecutors.   Institutional integrity is at risk whenever openness yields to secrecy, no matter how well intentioned.

{¶ 16}   Judge Winkler's findings do not, in my view, demonstrate that Officer Roach's privacy interest in sealing the court records of his criminal trial out-weighed the public's right of access to the official record of one of the most highly publicized shootings in Cincinnati's history.   If we are to defer to the judge's logic, then we have, I believe, failed to narrowly tailor the statute to protect the public's qualified right of access to court records guaranteed by the First Amendment, as well as the corresponding guarantees of Section 11, Article I of the Ohio Constitution and the Open Courts Amendment of Section 16, Article I of the Ohio Constitution.   *Scripps Howard,* supra, 73 Ohio St.3d at 20, 652 N.E.2d 179.

{¶ 17}   Because I believe that the public's constitutional right of access has been violated by the expungement, and because The Enquirer has no adequate remedy at law, I would grant the writ.