In re ESTATE OF ENGELHARDT.

2004-Ohio-825.]

Probate Court of Hamilton County.

No. 2002005167.

Decided Feb. 10, 2004.

James W. Ahlrichs, for the estate/movant.

JAMES CISSELL, Judge.

{¶ 1} The Estate of Robert J. Engelhardt Sr., through counsel, filed for an "order prohibiting the court from scanning for display on the Internet all records of this case and to remove all records of this case previously displayed on the Internet because said records contain sensitive financial information." See the Estate's "Application to Delete Pleadings from the Internet."

{¶ 2} The estate's request is intended to cover all records of the administration of the estate. The estate asserts that the record contains "the kind of information that is usually guarded by reasonable people, i.e. bank account numbers and balances, stock and brokerage holdings and a CPA's evaluation of a closely held corporation," and that disclosing such records on the Internet puts individuals "at significant risk for theft and harm and infringes on their constitutional right of

privacy." See the estate's "Memorandum in Support of Motion to Delete Pleadings from the Internet," at 1–2. The estate acknowledges that the documents filed in this matter are a public record within the meaning of the Public Records Act, R.C. 149.43, and acknowledges further that the Public Records Act mandates that such records be made available for public inspection. The estate asks the court to fulfill its obligation to provide public access to the court's public records by making these records available only at the court or upon specific request, but not on the court's website. The estate suggests that the court make only the docket sheet available on its website rather than providing full Internet access to all court records, which the public currently enjoys.

{¶ 3} This opinion will discuss first how the court maintains its records and the court's authority to maintain public records on its Internet website. Then it will consider whether the Ohio Public Records Act and relevant case law require the court to provide access to its public records on the Internet in the same manner that it is required to provide access to these same records at the court.

## I. Maintenance of Court Records

{¶ 4} Hamilton County Probate Court maintains and makes available its records in one or all of three possible media: paper, microfiche, and electronic. When a document is filed with the court, it is quickly scanned as a part of the Court Management System and for security purposes. Once scanned, the filing is simultaneously made available on the Internet. These documents are available for public review 24 hours a day on the Internet. To remove these filings from the Internet would require an additional step by court personnel to hide the document from Internet access. When the case is completed, these filings are converted to microfiche for archival purposes but remain available through the Internet or at the court on microfiche. Certain records of the court, such as the dockets, are created and maintained only in electronic form, and these are available only via the Internet. Thus, at any one time, the court may have records available in either paper form, microfiche form, or electronic form through the Internet.

{¶ 5} Generally, when an individual comes to the court to view a file or review a document, he or she does so on computer screens in the court's docket room, where the information or documents are available on monitors accessed through the Internet. Individuals may also review any microfiche or the court's paper file if the case is still open.

## Court Records as Available Public Records

{¶ 6} Pursuant to the Ohio Public Records Act, R.C. 149.43(B)(1), "all public records shall be * * * made available for inspection to any person at all

reasonable times during regular business hours." A "public record" means a record kept by any public office. R.C. 149.43(A)(1). A "record," as used in R.C. Chapter 149, includes "any document, device, or item, regardless of physical form or characteristic * * * created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). Court records are subject to disclosure under the Public Records Act. *State ex rel. Mothers Against Drunk Drivers v. Gosser* (1985), 20 Ohio St.3d 30, 20 OBR 279, 485 N.E.2d 706; *State ex rel. Cincinnati Enquirer v. Dinkelacker* (2001), 144 Ohio App.3d 725, 761 N.E.2d 656. Records are not required to be in paper form. They may be "electronic." R.C. 9.01; Sup.R. 26(D).

{¶ 7} The applicant acknowledged that "[u]nder all interpretations, the documents filed in this matter are a public record and [do] not fit any of the exceptions set forth in [R.C. 149.43] which requires all public records to be available for public inspection and scrutiny." See the estate's "Memorandum in Support of Motion to Delete Pleadings from the Internet," at 1. The court agrees that the case file and its contents are public records within the meaning of the Public Records Act, as they serve to document the functions of the court. Therefore, under the Public Records Act, the court is required to make the records in this case available for public inspection.

Authority to Make Public Records Available through the Internet

{¶ 8} Public offices have the authority to provide access to their public records on their Internet websites. R.C. 9.01 describes the methods by which public offices may maintain their records. It provides, inter alia, that any county office that is authorized or required to maintain any type of documents may record or copy the documents using a variety of means, including an electronic data process. In addition, Sup.R. 26(D)(2) provides that "[a] court may create, maintain, record, copy, or preserve a record using any nationally accepted records and information management process, including photography, microfilm, and electronic data processing, as an alternative to paper."

{¶ 9} Though these provisions do not expressly state that electronic records may be posted on the Internet, in 2000, the Ohio Attorney General issued an opinion recognizing the authority of a public office to do so. This opinion granted a county recorder discretion to determine whether he would permit additional access to public records through the Internet, provided that such access would not endanger the safety of the records or unreasonably interfere with the discharge of the recorder's duties. See 2000 Ohio Atty. Gen. Op. No. 2000-046, 2000 WL 33144710 (Ohio A.G.). The Attorney General based her decision to

allow the recorder to post public records on the Internet on the Ohio Supreme Court's consistent holdings that R.C. 149.43's fundamental policy is to promote open government. Id. at 1, citing *State ex rel. The Miami Student v. Miami Univ.* (1997), 79 Ohio St.3d 168, 171, 680 N.E.2d 956, certiorari denied (1997), 522 U.S. 1022, 118 S.Ct. 616, 139 L.E.2d 502. Since the Attorney General issued that opinion, a number of public offices in Ohio, including this court, have permitted access to public records through the Internet. Therefore, it is clear that the court has discretion to post its public records on the Internet.

Whether the Court May Remove Access to its Public Records via the Internet where such Access is Available and where the Records have not been Sealed at the Court

{¶ 10} Given that the court has exercised its discretion to provide public access to public records via its Internet website, the issue becomes whether the court may remove those records from the Internet upon request. Several legal authorities suggest that once a court chooses to provide access to its public records through the Internet, it should treat the removal of those records from the Internet in the same manner that it would treat removal or sealing of those records from public access at the court.[1] Sealing court records involves balancing the requirements of open court records pursuant to the First Amendment to the United States Constitution, Section 16, Article I of the Ohio Constitution, and the Ohio Public Records Act against individual's rights of privacy under the Fourteenth Amendment to the United States Constitution. See *Nixon v. Admr. of Gen. Serv.* (1977), 433 U.S. 425, 97 S.Ct. 2777, 53 L.E.2d 867; *State ex rel. The Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Winkler*, 149 Ohio App.3d 350, 2002-Ohio-4803, 777 N.E.2d 320, opinion after remand, *State ex rel. The Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Winkler*, 151 Ohio App.3d 10, 2002-Ohio-7334, 782 N.E.2d 1247 (an appeal to the Supreme Court of Ohio is pending in this case, which is case No. 2003–0157).

 {¶ 11} R.C. 149.43(B)(1) requires that all public records be made available for inspection to the public with some limited exceptions. R.C. 149.43(B)(2) provides that if any person chooses to obtain a copy of a public record in accordance with R.C. 149.43(B)(1), the public office "shall permit that person to choose to have the public record duplicated upon paper, upon *the same medium* upon which the public office or person responsible for the public record keeps it, *or upon any other medium* upon which the public office or person responsible for

---

1. Among the authorities suggesting that the court may not remove access to its public records via the Internet where such access is available at the court and where the records have not been sealed are R.C. 149.43 (the Ohio Public Records Act), Ohio Atty. Gen. Op. No. 2000–046, and possibly the Americans with Disabilities Act.

the public record determines that it reasonably can be duplicated as an integral part of the normal operations of the public office."[2] (Emphasis added.) Therefore, to the extent that the Internet is a "medium" within the meaning of R.C. 149.43(B)(2), the Public Records Act requires this court to make its public records available via the Internet when the records are available on the Internet as part of the normal operations of the court.

{¶ 12} To determine whether the Internet is a "medium" within the meaning of the statute, it is first necessary to establish the definition of "medium." The word "medium" is not defined in R.C. Chapter 149. R.C. 1.42 provides that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42 applies to all sections of the Ohio Revised Code, including the Public Records Act. See R.C. 1.41.

{¶ 13} Because there is no statutory definition of "medium," the word's common usage will be ascertained by reference to the Oxford English Dictionary, which provides several definitions of the word. See Oxford English Dictionary Online (new edition: draft entry Sept. 2003) available to subscribers at <http://dictionary.oed.com/entrance.dtl>.[3] In the context of R.C. 149.43, three of this dictionary's definitions are relevant. They suggest irrebutably that the Internet is a medium within the meaning of R.C. 149.43(B)(2).

{¶ 14} The first relevant definition is "something which is ˈintermediate between two degrees, amounts, qualities, or classes; a middle state." Oxford English Dictionary Online, supra, at "medium," A(I). The Internet constitutes a "medium" under this definition because it is an intermediate between the original record that is on file with the court and the public who views the record on the court's website.

{¶ 15} The second relevant definition is "[a] channel of mass communication, as newspapers, radio, television, etc." Id. at "medium," A(II)(4)(d). The Internet also clearly falls within this definition. Indeed, the Revised Code actually includes the Internet as an example of communications media in R.C. 3916.01(A). This provision defines the word "advertising" and states expressly that the meaning of the word includes "any communication by means of recorded telephone messages or transmitted on radio, television, *the internet, or similar communications media.*" (Emphasis added.) In addition, Ohio Atty. Gen. Op.

---

**2.** The court has been requested to provide all of its available records via the Internet.

**3.** For definitions of the word "medium" in print that are similar to the online definitions that are referenced, see The American Heritage Dictionary of the English Language (4th Ed.2000) 1092.

No. 2000–046 unequivocally calls the Internet a communications medium. 2000 Ohio Opinion Atty. Gen. No. 2000–046, 2000 WL 33144710 (Ohio A.G.), at 6. In footnote 1, that opinion calls the Internet a collection of interconnected networks of computers that enables various entities to send information to each other instantaneously, and states that "[t]he Internet thus is a *medium* for transmitting information." 2000 WL 33144710 (Ohio A.G.). (Emphasis added.) Id. at footnote 1.

{¶ 16} The third relevant definition of "medium" is "[a]ny physical material (as tape, disk, paper, etc.) used for recording or reproducing data, images, or sound." Oxford English Dictionary Online, supra, at "medium," A(II)(4)(e). It could be argued that the Internet itself might not be considered a "medium" under this definition, given that it is not "physical material." Nevertheless, it is undeniable that the electronic records which are posted on the Internet fall under this definition of "medium," as they are physical material used for recording information. Further, court records that exist only in electronic form, such as the dockets, require a method or medium to make them accessible and intelligible. For the Hamilton County Probate Court, the medium is the Internet.

{¶ 17} Under the first two definitions, the Internet is a "medium" itself, and under the third, the electronic files that are posted on the Internet are "media." Each of these three definitions supports the idea that the Internet is a medium. The Revised Code itself uses the term "medium" a number of times in its sense as a means of communication.[4] The court finds that the Internet is a "medium" within the meaning of R.C. 149.43.

{¶ 18} R.C. 149.43(B)(2) requires a public office to provide copies of its public records to any person who wishes a copy. Moreover, that person may choose to have the records duplicated on any medium on which the court keeps the record. R.C. 149.43(B)(2). Therefore, because the Internet is a medium under R.C. 149.43(B)(2), the court is obligated to make public records available on the Internet because it communicates those records through the Internet.

---

4. See again R.C. 3916.01(A), supra. Other examples of the term "medium" as used in this manner in the Ohio Revised Code include the following: R.C. 1309.516(B)(1) (this statute pertains to commercial transactions and states that filing does not occur as to a record that a filing office refuses to accept because "[t]he record is not *communicated by a method or medium of communication* authorized by the filing office." [Emphasis added.]); R.C. 1707.03(O)(1)(c) (this statute pertains to securities and states that the sale of any equity security is exempt if, inter alia, "[n]o advertisement, article, notice, *or other communication published in any newspaper, magazine, or similar medium * * *￼* is used in connection with the sale" [Emphasis added.]); R.C. 3317.06 (this statute pertains to education; its definition of "electronic software" includes "electronic medium or *other means of conveying information to the student*." [Emphasis added.]).

{¶ 19} Under this analysis, this court must treat the public records it posts on the Internet in the same manner as it treats the public records maintained at the court. Therefore, the court has no discretion to remove from the Internet any public records that it continues to make available publicly at the court.

{¶ 20} Ohio Atty. Gen. Op. No. 2000–046 also supports the position that once a public office chooses to post public records on the Internet, it does not have the discretion to remove public records from the Internet upon request. One of the issues before the Attorney General in that opinion was whether a county recorder could limit Internet access to real estate title companies. The opinion held that it could not. It stated that "[b]ecause R.C. 149.43(B) requires a county recorder to permit all persons access to public records, a county recorder is granted no discretion in determining who is entitled to additional access to such records through the Internet. Once a county recorder chooses to grant additional access to indexed public records through the Internet, he is required by R.C. 149.43(B) to grant such additional access to all persons." Though this opinion is not directly on point because it deals with the issue of whether a public office can limit Internet access to public records to a certain group, the holding is relevant because it suggests that once a public office exercises its discretion to post public records on the Internet, the public office does not have the authority to limit Internet access. As applied to this case, the implication is that the court does not have authority to limit access to its public records by removing public records from the Internet on request. The court so finds in this case.

### The Americans with Disabilities Act

{¶ 21} Because the Ohio Public Records Act is determinative of the application before the court, it is not necessary to decide whether the Americans with Disabilities Act requires that Internet access be maintained for records that have been available on the Internet. However, as an observation, the court will note that the Americans With Disabilities Act ("ADA") suggests that once the court has chosen to provide access to its public records over the Internet, the standards that apply for removal of records from the court also apply to removal of records from the Internet. Removing case files from the Internet may implicate the ADA because such removal may preclude access to public records for those individuals whose disabilities prevent them from traveling to the court.

{¶ 22} The Americans With Disabilities Act prohibits discrimination by state and local governments against disabled individuals. Title II of the Act provides:

"[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any such entity." Section 12132, Title 42, U.S.Code.

{¶ 23} The Code of Federal Regulations provides that "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others." Section 35.160(a), Title 28, C.F.R. If this court were to remove public records from the Internet on request, it would be actively taking measures to deny access to public records that certain disabled individuals would otherwise enjoy. This is because once a document is filed with the court, it is almost immediately scanned for court management and security purposes, and, upon scanning, the document is instantly available on the Internet. To remove the document would require some additional act by court personnel.

{¶ 24} The implication of denying disabled individuals access to public records was discussed in the dissenting opinion of Justice Wright in *State ex rel Nelson v. Fuerst* (1993), 66 Ohio St.3d 47, 607 N.E.2d 836. In *Fuerst*, a prison inmate sued the clerk of courts for refusing to mail certain public records to him while he was incarcerated. The court denied his claim for relief, holding that Ohio law imposed no duty on the clerk of court (at that time)[5] to mail records upon request. In the dissenting opinion, Justice Wright wrote:

"By reversing the court below * * * the majority seems to hold that people who are physically unable to travel to the public-records custodian are not entitled to obtain public records to the same extent as people who are able to do so in person. This decision has a most devastating impact on the right of prisoners, hospitalized people, and the disabled to examine public records. I feel that the court has foreclosed to these groups rights under the public-records statute expressly granted to all Ohioans by the General Assembly. As to the hospitalized and the disabled, I am especially concerned that this decision may violate the Americans With Disabilities Act." Id., 66 Ohio St.3d at 52, 607 N.E.2d 836 (the question of ADA applicability was not directly implicated in *Fuerst* because the plaintiff was not disabled).

CONCLUSION

{¶ 25} Applying the relevant case law and statutory provisions to the estate's application, the court finds that it must treat the applicant's request to remove documents from the Internet in the same manner as it would treat a request to seal a record from public access at the court. The applicant acknowledges that

---

5. The Public Records Act now requires a public office to mail a copy of public records to an individual on request. See R.C. 149.43(B)(3).

the documents she seeks to remove from the Internet are public records. She has neither argued nor even suggested that these documents meet the constitutional standard that would permit them to be sealed. Rather, she suggests that the court should fulfill its obligation to provide access to public records by making these records available only at the court or upon specific request, but not on the court's website. This, however, would effectively make removal of public records from the Internet merely a discretionary matter for the court. This is not what the Public Records Act requires. Given that the court must provide access to its public records over the Internet in the same manner it provides access to them at the court, the court cannot grant the applicant's request.[6] Accordingly, the application to delete pleadings from the Internet is hereby denied.

{¶ 26} This decision does not foreclose the possibility that there may be a rare situation where weighing the constitutional requirements of open courts against the Fourteenth Amendment privacy rights of the individual does not permit the sealing of a court record but may require that it be withheld from the Internet. That is not the situation in this case.

{¶ 27} SO ORDERED.

Application denied.

---

6. As an historical aside, the court notes the case of *Moore v. Bd. of Chosen Freeholders of the Cty. of Mercer* (1962), 76 N.J.Super. 396, 184 A.2d 748, 754, where the Superior Court of New Jersey reversed a lower court which had held that, while the plaintiffs were entitled to inspect and hand-copy public records, they were not entitled to photocopy those records. It is interesting to substitute the word "Internet" for "photocopy" in the following quote from the court's opinion:

> "Photocopying [Using the Internet] is an everyday procedure in business and professional offices, large and small. Plaintiffs cannot be restricted to the use of pen, pencil and pad. Were we to accept the reason defendants advance for denying the right to photocopy [use the Internet], then it might well be said that a records custodian in some past day could, with equal justification, have insisted that the interested citizen could use quill instead of pen, or pen instead of typewriter."