In re ESTATE OF CARPENTER.

In re Guardianship of Carpenter.

In re Trust of Carpenter.

In re Estate of Thomas.

In re Guardianship of Thomas.

In re Trust of Thomas.

2004-Ohio-830.]

Probate Court of Hamilton County.

Nos. 1999991701, 2003004681, 2003004991, 2001001928, 2003004994 and 2003004680.

Decided Feb. 10, 2004.

Terrie Sherman, for the estates.

David Montgomery, for the guardianship and wrongful death trusts.

Alphonse A. Gerhardstein, Scott T. Greenwood, and Kenneth L. Lawson, for the plaintiffs in the civil rights actions.

Donald Hardin, for the individual defendants in the civil rights actions.

Julie Bissinger, for the city of Cincinnati.

Colleen Laux, guardian ad litem for the minors.

---

JAMES CISSELL, Judge.

{¶ 1} In May 2003, 16 civil rights lawsuits pending in the United States District Court for the Southern District of Ohio involving 22 plaintiffs, 44 individual defendants, and the city of Cincinnati were settled by establishing a qualified settlement fund [1] of $4.5 million through the United States District Court for the Southern District of Ohio. See "Order Establishing Qualified Settlement Fund, Appointing Fund Administrator, and Conditionally Dismissing Claims with Prejudice," attached as Exhibit A to the Amicus Brief of Civil Rights Attorneys in support of the motions to seal the records filed in both the Thomas and Carpenter estates. The 468B process allows multiple defendants to pay to multiple plaintiffs on multiple claims by making a single payment through an administrator. The defendants are not involved in the division or distribution of the funds among the plaintiffs. That is left to the administrator of the 468B federal fund and the various plaintiffs. Although the overall settlement was published, the federal court sealed whatever agreements were ultimately concluded by the various plaintiffs and the 468B administrator.

{¶ 2} Two of the cases involved in the settlement fund are before this court because Ohio law mandates that this court approve settlements of wrongful death cases and division of settlement funds among next of kin. R.C. 2125.03(A)(1). Further, as part of the settlement, distributions were to be made to two minor children of deceased parents. Consequently, guardianships and wrongful death trusts were established for these children, pursuant to R.C. 2125.03(A)(2).

{¶ 3} The first case involves the estate of Michael Demon Carpenter, whose family alleged that his death on March 19, 1999, was the result of excessive use of force by members of the Cincinnati Police Department as they attempted to arrest him. The second case involves Timothy Thomas, who was fatally shot by a

---

1. Section 1.468B–1(c), Title 26, C.F.R. sets forth the requirements for establishing a qualified settlement fund. This section will be referred to as "468B."

Cincinnati police officer on April 7, 2001, after a foot chase in the Over the Rhine section of Cincinnati. Both of these deaths were highly publicized and led to civil rights claims in the federal court and were two of the cases involved in the qualified settlement fund.

{¶ 4} The administrator of the estate of Michael Carpenter and the administrator of the estate of Timothy Thomas, together with the guardians and the trustees appointed in the estates and wrongful death trusts of the decedents' minor children, Tyeisha Carpenter, the minor child of Michael Carpenter and Tywon Thomas, the minor child of Timothy Thomas, moved to seal all records in the respective estates, guardianships, and trusteeships. Their various motions to seal were supported by Alfonse A. Gerhardstein, Scott T. Greenwood, and Kenneth L. Lawson, the trial attorneys for the plaintiffs in the civil rights cases in the United States District Court; by Donald Hardin; defense attorney for individual defendants in those actions; by Julie Bissinger, attorney for the city of Cincinnati; and by Colleen B. Laux, guardian ad litem of the minor Tyeisha M. Carpenter and the minor Tywon Thomas.

{¶ 5} All the motions request that every record in each of the estates, guardianships, and trusts be sealed for the reason that the federal district court sealed the division of the qualified settlement fund. The motions argue further that disclosure in this court of the respective settlement amounts from the qualified settlement fund would violate the district court's order.[2] These figures appear in the applications to approve the settlement and distribution of the wrongful death proceeds in both estates. In effect, the applicants are asserting that this is derivative information from the sealed agreements and, as such, must be sealed in this court, also. In addition, the motions argue that any division of these funds to adult next-of-kin from the two wrongful death claims is potentially embarrassing and harmful to them. Finally, the fiduciaries argue on behalf of the minors that revealing the amounts being distributed to the minor's trusts and subsequent spending of funds from those trusts will be harmful to the children.

---

2. The district court did not issue a separate order sealing the division of the settlement fund. Rather, the district court order that established the fund states that the district court would oversee compliance with the terms of settlement fund. See "Order Establishing Qualified Settlement Fund, Appointing Fund Administrator, and Conditionally Dismissing Claims with Prejudice," at 11, attached as Exhibit A to the Amicus Brief of Civil Rights Attorneys in support of the motions to seal the records filed in both the Thomas and Carpenter estates. The terms of the settlement fund provide that "[t]hose agreements between the plaintiffs and the fund administrator are confidential between those parties." See "Collaborative Agreement Global Damage Claims Settlement," at 3, paragraph 9, attached as Exhibit B to the Amicus Brief of Civil Rights Attorneys in support of Motion to Seal Records filed in both the Thomas and Carpenter estates. Thus, the applicants are asserting that because the district court ordered compliance with the terms of the settlement, and because the terms of the settlement provide that the division of the funds is confidential, to reveal the division would be to violate the district court order.

{¶ 6} The Cincinnati Enquirer published a story on September 27, 2003, in which it listed settlement amounts presumably agreed to between the qualified settlement fund administrator and the fiduciaries of the estates of Michael Carpenter and Timothy Thomas. The article included a proposed distribution of each estate's settlement as these proposals appeared on the applications to approve the settlement and distribution of wrongful death proceeds that were filed in these two estates. The court assumes that settlement figures published in each case were the amounts that were agreed upon by the qualified settlement fund administrator and the fiduciaries of the estates.[3] However, the "agreed" distribution amounts of these funds are merely proposals offered to this court for its review. This court can accept, reject, or deviate from these proposals and divide the funds in a different manner. R.C. 2125.03(A)(1).

{¶ 7} Generally, court documents and proceedings are public records subject to disclosure under Ohio's Public Records Act. R.C. 149.43 et seq.; *State ex rel. Mothers Against Drunk Drivers v. Gosser* (1985), 20 Ohio St.3d 30, 20 OBR 279, 485 N.E.2d 706; *State ex rel. Cincinnati Enquirer v. Dinkelacker* (2001), 144 Ohio App.3d 725, 761 N.E.2d 656. The Public Records Act must be construed liberally in favor of broad access with doubt being resolved in favor of disclosure. *State ex rel. Beacon Journal Publishing Co. v. Bond,* 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180; *State ex rel. Cincinnati Enquirer v. Dinkelacker* (2001), 144 Ohio App.3d 725, 761 N.E.2d 656.

{¶ 8} Under federal common law and the First Amendment to the United States Constitution, trials and court records are presumptively open and available for public inspection. See, generally, *Richmond Newspapers v. Virginia* (1980), 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973; *Nixon v. Warner Communications* (1978), 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570; *Washington Post v. Robinson* (C.A.D.C. 1991), 935 F.2d 282; *Publicker Industries, Inc. v. Cohen* (C.A.3, 1984), 733 F.2d 1059; *State ex rel. Plain Dealer Publishing Co. v. Geauga Cty. Court of Common Pleas* (2000), 90 Ohio St.3d 79, 734 N.E.2d 1214. This legal maxim is subject to a Fourteenth Amendment limited right to a privacy balancing test, where the court must determine whether the right to access is outweighed by the individual's privacy interest. See *Nixon v. Admr. of Gen. Serv.* (1977), 433 U.S. 425, 97 S.Ct. 2777, 53 L.E.2d 867. Any sealing of records should be "narrowly tailored to serve the competing interests of protecting the individual's privacy without unduly burdening the public's right of access." *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Winkler,* 149 Ohio App.3d 350, 2002-Ohio-4803, 777 N.E.2d 320, opinion after remand, *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info.*

---

**3.** How the newspaper received this information has not been determined.

*Network, Inc. v. Winkler,* 151 Ohio App.3d 10, 2002-Ohio-7334, 782 N.E.2d 1247 (an appeal to the Supreme Court of Ohio is pending in this case, which is case No. 2003–0157). See, also, *Kallstrom v. Columbus* (C.A.6, 1998), 136 F.3d 1055, rehearing and suggestion for rehearing en banc denied (May 19, 1998). The "open courts" provisions of the Ohio Constitution, Section 16, Article I, have been interpreted as being co-extensive with the right to open courts and court records pursuant to the First Amendment to the United States Constitution. *State ex rel. Beacon Journal Publishing v. Bond,* 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180; *Cleveland v. Trzebuckowski* (1999), 85 Ohio St.3d 524, 709 N.E.2d 1148; *In re T.R.* (1990), 52 Ohio St.3d 6, 556 N.E.2d 439.

■ {¶ 9} To seal a record, a court must find that the risk of harm to the individual's privacy rights outweighs the public's interest in maximum public access to court records, governmental accountability, public safety, and the use of the courts to resolve disputes and the effective use of the court's staff. See, e.g., *Kallstrom v. Columbus* (C.A.6, 1998), 136 F.3d 1055, rehearing and suggestion for rehearing en banc denied (May 19, 1998).

{¶ 10} Applying the principles to the facts in these two cases, the court hereby finds as follows:

### 1. Disclosure of the Gross Settlement Figures

■ {¶ 11} The court rejects the suggestion that the records of these proceedings must be sealed because the United States District Court sealed the agreements between the plaintiffs and the 468B fund administrator. Those agreements have never been revealed to this court and as such this court is in no position to seal or unseal such agreements. Even acknowledging that the gross amounts in the settlement proposals may be derived from figures agreed to by various parties in the United States District Court, that does not change *this* court's duties under Ohio law. Disclosure of these matters is necessary to the ongoing business of this court, and specifically to the decisions that it must render in these two cases. One of the stated goals of the settlements reached in those civil right's cases was to foster an atmosphere of mutual respect and trust among community members, including the police. See "Order Establishing Qualified Settlement Fund, Appointing Fund Administrator, and Conditionally Dismissing Claims with Prejudice," at 7–8, attached as Exhibit A to the Amicus Brief of Civil Rights Attorneys in support of the motions to seal the records filed in both the Thomas and Carpenter estates. Disclosing the gross settlement figures in these two cases promotes the goals of fostering mutual respect and trust among community members. Further, since the proposed settlement figures were already disclosed in the Cincinnati Enquirer prior to the hearing in

28

this court, there remains nothing to protect in the way of privacy interests as it relates to these gross settlement figures.[4]

{¶ 12} Accordingly, the request to seal the filings in these cases through October 27, 2003, the date of the hearing in this court, is denied.

### Future Filings

{¶ 13} The question of whether the court's future rulings in these cases, including the ultimate distribution of the funds and whether future reports of the guardians ad litem and future accounts and other records of the trustee's of the minors should be sealed, is more problematic. It requires further consideration of the balance between the public's right to access and the privacy rights of the minors involved.

{¶ 14} The public's right to access has been discussed above. The relevant analysis is the risk of harm to the individuals who would be affected by the disclosure. See *Kallstrom v. Columbus* (C.A.6, 1998), 136 F.3d 1055, rehearing and suggestion for rehearing en banc denied (May 19, 1998).

{¶ 15} At the hearing, there was testimony that continuing newspaper attention causes one of the children to suffer flashbacks, potential safety problems, and the reliving of the death of the child's father. The grandmother of the other child testified that she had particular safety concerns for her grandchild because of his current living environment where there are constant drug sales, random acts of violence, gang graffiti, and reference in the neighborhood to the minor as the "million dollar baby." People wish to constantly touch her grandson. He has become a curiosity piece and may become a target for opportunists.

{¶ 16} Witness Greg Taliaferro, M.D., a specialist in children with trauma history, testified that continued attention on these settlements creates unresolved issues for the children, retraumatization with an increase in depression and anxiety, including the recurrence or re-emergence of nightmares, as well as increased behavioral problems. As a result, he testified in his expert opinion that there is a psychological risk in the children having significant changes in their financial status being made publicly available. He opined that the child could become a target of the community not just because the child is perceived as a person with money but because of community response concerning whether or not the community thinks the compensation is fair. The doctor testified that open, unrestricted access to sensitive information would increase the probability

---

4. To the extent that the various attorneys and parties involved in these matters may have an obligation to secure any information that pertains to the individual settlement agreements, those obligations have been fulfilled by the parties' aggressive arguments in support of the motions to seal these records.

of harm to the child. Further, unlike most trusteeships arising out of wrongful death cases, the fact that these matters have received extensive media attention, not only in the immediate community but throughout the country, suggests that as expenditures may occur from the trusts, there will be continued publicity that would tend to shine a spotlight on the children and, in turn, "could interfere" with the child's development and cause retraumatization. Thus, the result of the attention to these cases, which is far beyond the attention in other cases involving wrongful death settlement, is that the child "would be traumatized and an exacerbation of behavioral problems as well as re-emergence of emotional distress." The knowledge of the specific application of these funds over the years would be more harmful than other similar cases due to the "public traumatic nature, the public reaction to it, the reaction of the peers following the death in the neighborhood and re-emergence of the trauma reaction."

{¶ 17} Based on the foregoing, the court finds that the public interest in these cases is satisfied by the knowledge of the overall settlement of the $4.5 million involving the 22 plaintiffs and specifically by the knowledge of the gross amounts distributed in these two cases. Accordingly, the court finds that the privacy interests of the individuals receiving a division of the settlement figures outweighs the public interest in disclosure of the specific allocation of the funds. Such disclosure of the division of the settlement fund satisfies only a voyeuristic interest. The court finds that protecting the privacy interests of the children to develop as normally as possible under their tragic circumstances outweighs any public right to know this specific information.

{¶ 18} Therefore, the specific division of the settlement funds, the reports of the guardian ad litem and the continuing reports, filings, inventories, and accounts of the trusts of the minors should be and are hereby sealed. Separate entries consistent with this opinion have been journalized in all related cases.

Motions to seal
granted in part.